Charles **PUTENSEN**, As Conservator of Carolyn A. Putensen, Appellant,

v.

**HAWKEYE BANK OF CLAY COUNTY, Appellee.**

No. 96–674.

Supreme Court of Iowa.

June 18, 1997.

Ned A. Stockdale of Fitzgibbons Brothers, Estherville, for appellant.

Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Though the point is disputed, we can assume that a bank had actual knowledge that one of its borrowers who, though not adjudged incompetent, suffered from at least some mental disability. The question is whether, in a foreclosure proceeding under Iowa Code chapter 655A (1993), this actual knowledge obligated the bank to obtain process against the borrower in accordance with Iowa rule of civil procedure 56.1(c) so as to accord the protections established for persons adjudged to be incompetent. The trial court determined there was no such obligation and we agree.

I. Iowa Code chapter 655A provides a simplified alternative to the customary real estate mortgage foreclosure proceedings specified in Iowa Code chapter 654. It is not available to foreclose mortgages on agricultural land. A nonjudicial foreclosure of nonagricultural land under the alternative procedure requires the mortgagee to give the mortgagor notice described in Iowa Code

section 655A.3.[1] A mortgagee must also provide an opportunity for the mortgagor to cure under section 654.2D.[2] The notice "shall be served as provided in the rules of civil procedure for service of original notice." Iowa Code § 655A.4. The mortgagor then has thirty days either to cure the default or to cancel the proceedings by filing a rejection of the notice (thereby requiring the mortgagee to pursue foreclosure under Iowa Code chapter 654). *Id.* §§ 655A.5, .6. If the mortgagor fails to cure or file a rejection within the thirty-day period, the mortgagee can file a copy of the notice and proof of service with the county recorder and thereby effect foreclosure on the real estate. *Id.* § 655A.7. The consequences of this nonjudicial foreclosure are:

1. The mortgagee acquires and succeeds to all interest of the mortgagor in the real estate;

2. All liens which are inferior to the lien of the foreclosed mortgage are extinguished; and

3. The indebtedness secured by the foreclosed mortgage is extinguished.

*Id.* § 655A.8. The chapter 655A procedures for nonjudicial foreclosure do not provide for entry of a judgment—nor indeed for any participation—by the district court. Neither does the recorder act in any manner beyond receiving and retaining the papers filed by the mortgagee.

II. Carolyn Putensen borrowed $38,500 from Hawkeye Bank of Clay County (Hawkeye Bank) to purchase a home in Spirit Lake in July 1993. The purchase price was $54,-500. When Carolyn failed to make a mortgage payment on the loan in April 1994, Hawkeye Bank attempted to reach her several times but was unsuccessful. On May 11 a loan officer visited with Charles Putensen, Carolyn's former husband, who reported that she was in a mental institution in Nevada, after the Nevada state patrol had found her along an interstate highway. On May 16 Carolyn appeared at Hawkeye Bank and made a mortgage payment. A bank loan officer described her as appearing normal and mentally stable, though in some respects her later behavior could only be described as unusual.

---

1. Iowa Code § 655A.3 provides in part:
   1. The nonjudicial foreclosure is initiated by the mortgagee by serving on the mortgagor a written notice which shall:
   a. Reasonably identify the mortgage and accurately describe the real estate covered.
   b. Specify the terms of the mortgage with which the mortgagor has not complied. The terms shall not include any obligations arising from acceleration of the indebtedness secured by the mortgage.
   c. State that, unless within thirty days after the completed service of the notice the mortgagor performs the terms in default or files with the recorder of the county where the mortgaged property is located a rejection of the notice pursuant to section 655A.6 and serves a copy of the rejection upon the mortgagee, the mortgage will be foreclosed.
   This section then provides the required wording for the notice and that the notice must be served on "the person in possession of the real estate, if different than the mortgagor, and on all junior lienholders of record."

2. Section 654.2D provides in relevant part:
   1. Except as provided in section 654.2A, a creditor shall comply with this section before initiating an action pursuant to this chapter or initiating the procedure established pursuant to chapter 655A to foreclose on a deed of trust or mortgage.

   2. A creditor who believes in good faith that a borrower on a deed of trust or mortgage on a homestead is in default shall give the borrower a notice of right to cure as provided in section 654.2B. A creditor gives the notice when a creditor delivers the notice to the consumer or mails the notice to the borrower's residence as defined in section 537.1201, subsection 4.
   3. The borrower has a right to cure the default within thirty days from the date the creditor gives the notice.
   4. a. The creditor shall not accelerate the maturity of the unpaid balance of the obligation, demand or otherwise take possession of the land, otherwise than by accepting a voluntary surrender of it, or otherwise attempt to enforce the obligation until thirty days after a proper notice of the right to cure is given.
   b. Until the expiration of thirty days after notice is given, the borrower may cure the default by tendering either the amount of all unpaid installments due at the time of the tender, without acceleration, or the amount stated in the notice of right to cure, whichever is less, or by tendering any other performance necessary to cure a default which is described in the notice of right to cure.
   5. The act of curing a default restores to the borrower the borrower's rights under the obligation and the deed of trust or mortgage.

On June 2 Carolyn gave Hawkeye Bank a handwritten note stating she was selling the house and would not make any further payments. Hawkeye Bank responded to her in writing that she was required to continue to make the mortgage payments. She failed to do so and accordingly, on July 30, the bank served her with notice of foreclosure pursuant to Iowa Code chapter 655A. Carolyn was served at the same time with notice of a small claims petition filed by Hawkeye Bank concerning a credit card debt. Carolyn reacted only to the small claims petition. She retained an attorney, John Sandy, to represent her on the small claims action but did not retain counsel for the foreclosure matter. She also failed to file a rejection of the foreclosure notice within the thirty days specified in Iowa Code section 655A.6.

On September 7 the bank completed the foreclosure by filing the supporting affidavit specified in Code section 655A.7 and brought a forcible entry and detainer action to evict Carolyn and her son from the home. Carolyn and her son also retained John Sandy to represent them in the forcible-entry-and-detainer action which resulted in an order of removal. After Carolyn's eviction she began living in her car. On November 29 she was committed to a mental hospital. In March 1995 Hawkeye Bank sold the property for $46,300.

In March 1995 Charles Putensen was appointed as Carolyn's conservator in a voluntary proceeding. On April 3 he filed the present action as a petition to vacate the nonjudicial foreclosure. The petition was later amended to withdraw the petition and substitute a claim for money damages.

The district court sustained the bank's motion for summary judgment. The court relied on several grounds, including a determination that the appointment of a guardian ad litem is not required in order to commence a nonjudicial foreclosure proceeding when "the mortgagor has not been adjudged incompe-

tent and is not confined to a hospital for the mentally ill."

The matter is before us on Charles' appeal.

■ III. Summary judgment is appropriate under Iowa rule of civil procedure 237 only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *City of West Branch v. Miller,* 546 N.W.2d 598, 600 (Iowa 1996). In reviewing a summary judgment, we consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *City of West Branch,* 546 N.W.2d at 600. No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. *Id.*

■ We examine the record before the district court to decide whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Gerst v. Marshall,* 549 N.W.2d 810, 811–12 (Iowa 1996). We view the facts in the light most favorable to the party opposing the motion for summary judgment. *Id.* If reasonable minds could draw different inferences and reach different conclusions based on these facts, then summary judgment is inappropriate. *Walker Shoe Store, Inc. v. Howard's Hobby Shop,* 327 N.W.2d 725, 728 (Iowa 1982). Our review of constitutional challenges is de novo. *State v. White,* 545 N.W.2d 552, 554 (Iowa 1996).

IV. Charles contends a court can and should vacate the foreclosure, either under Iowa rule of civil procedure 252(c) [3] or on the basis of a court's inherent power. Hawkeye Bank denies a court holds authority to vacate foreclosure on either basis. We choose to leave the point unresolved. Without suggesting that this authority exists, we decline to exercise it because we conclude it would be imprudent to do so.

■ We think the enhanced protection incident to requiring a guardian ad litem

---

**3.** Iowa rule of civil procedure 252 provides in relevant part:

> Upon timely petition and notice under R.C.P. 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds:

> . . . .
> (c) Erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record.

should arise only after there has been an adjudication of incompetence. Financial institutions are not equipped to assess mental conditions of their customers and should not be expected to do so. The line between the idiosyncratic person and a mildly or even moderately mentally disturbed person can easily become blurred. An idiosyncratic person is surely entitled to free access to a bank's services, and this freedom would be compromised to any extent such persons could escape responsibility for their commercial transactions. Utter chaos would attend a rule that would require a bank to conduct its customer relations on the basis of its lay assessment of the customer's mental condition.

■ We conclude the business community is free, in the absence of bad faith, to rely on the legal capacity of adult persons who have not been adjudged incompetent.

V. Charles also raises due process challenges under both the federal and state Constitutions. He believes the foreclosure did not comply with due process because, in view of the bank's actual knowledge of Carolyn's mental condition, it should have provided her with service as provided in Iowa rule of civil procedure 56.1(c) (service of original notice of action against persons judicially adjudged incompetent).

■ We first consider the challenge under article I, section 9 of the Iowa Constitution ("no person shall be deprived of life, liberty, or property, without due process of law"). It is the exclusive prerogative of our court to determine the constitutionality of Iowa statutes challenged under our own Constitution. *Iowa–Illinois Gas & Elec. Co. v. City of Fort Dodge*, 248 Iowa 1201, 1224, 85 N.W.2d 28, 41 (1957). We are not bound in doing so by the United States Supreme Court's interpretations of the due process clause in the federal Constitution, although we may look upon them for such guidance as we think they afford. *Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d 583, 593 (Iowa 1971). Our freedom to interpret our own Constitution is of course in contrast to determinations in federal constitutional challenges, in which we are obliged to conform with the interpretations of

the United States Supreme Court. *State v. James*, 393 N.W.2d 465, 466 (Iowa 1986).

We have observed a threshold question in due process challenges under our Constitution to be whether state action is involved. *Jensen v. Schreck*, 275 N.W.2d 374, 384 (Iowa 1979). A requirement for state action seems to have originated in federal cases interpreting the due process clause in the fifth and fourteenth amendments of the federal Constitution which were concerned with the rights of sovereign states in the federal system of government. Because federalism is of little or no concern in a state constitutional interpretation, and in view of our prerogative in the matter, one might wonder why a state action requirement should be imposed on the sweeping language of article I section 9 ("no person shall be deprived of . . ."). At least one jurisdiction, although retaining a state action requirement regarding an identical clause, has lowered the standard for state involvement. *See Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 408 N.Y.S.2d 39, 43–45, 379 N.E.2d 1169, 1173–74 (1978).

■ But the reason state action is made a threshold requirement in state due process challenges seems apparent. Constitutions were not designed to micromanage disputes between citizens, and, to resolve most lawsuits, citizens must resort to statutes and the common law. A state due process clause becomes implicated at the point where the power of the state is called upon by a private party in such a way as to deprive another of life, liberty or property. In *Jensen* we said this point is reached:

> (1) where a state acts directly through its officer or agent; (2) where the state acts in conjunction with business in a profit-making field; (3) where the state by its actions (or inaction) encourages or creates an atmosphere in which private citizens deprive others of their constitutional rights; (4) where the state affirmatively orders or approves the action in the course of its regulatory rule-making; and (5) where functions traditionally performed by the state are delegated to or performed by private interests.

275 N.W.2d at 385 (quoting *Howe v. United Parcel Serv., Inc.,* 379 F.Supp. 667, 670 (S.D.Iowa 1974)).

■ Two factors, considered together, lead us to conclude that the necessary state action required to implement the due process clause in article I, section 9 of our Constitution is lacking on the facts in the present case. An insufficiency of state involvement is combined with an insufficiency of action.

Mortgagees pursuing a Code chapter 655A foreclosure do so without state participation. No government conduct is involved and no government permission is necessary before undertaking the procedure because foreclosures are unregulated. The property rights of mortgagors are in no way affected by any action or lack of action by the government.

The necessary action is lacking because the property rights of mortgagors remain largely unaffected by reliance on chapter 655A. The proceeding can go forward only at sufferance of the mortgagor because, under section 655A.6, the attempted foreclosure is rendered a nullity if the mortgagor rejects it within thirty days.

Because state action is absent, we reject Charles' state due process challenge.

■ VI. Charles also raises a due process challenge under the federal Constitution which we also reject because no state action was implicated.

The federal due process clause requires

at a minimum ... that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 873 (1950). This is because

[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information.

*Id.* at 314, 70 S.Ct. at 657, 94 L.Ed. at 873 (citations omitted).

Charles grounds his federal due process challenge on the point made in *Covey v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956). In *Covey* a town foreclosed on real property owned by a mentally incompetent person who had failed to pay town taxes. The court stated the homeowner was "known by the officials and citizens of the [town] to be a person without mental capacity to handle her affairs or to understand the meaning of any notice served upon her." *Id.* at 146, 76 S.Ct. at 727, 100 L.Ed. at 1026. The court held:

Notice to a person known to be an incompetent who is without the protection of a guardian does not measure up to [the due process] requirement. Assuming the truth of the uncontradicted assertions, that the taxpayer ... was wholly unable to understand the nature of the proceedings against her property (from which it must be inferred that she was unable to avail herself of the statutory procedure for redemption or answer), and that the town authorities knew her to be an unprotected incompetent, we must hold that compliance with the statute would not afford notice to the incompetent and that a taking under such circumstances would be without due process of law.

*Id.* at 146–47, 76 S.Ct. at 727, 100 L.Ed. at 1026.

Soon after *Covey* the court decided *Nelson v. City of New York,* 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956). In *Nelson* the court distinguished *Covey* and held that if a city does not have any knowledge or notice of an owner's alleged mental incompetency, the city complies with due process when it serves personal notice. *Id.* at 108–09, 77 S.Ct. at 198–99, 1 L.Ed.2d at 175.

■ The due process clause of the fourteenth amendment only applies if there is state action under the interpretations of the United States Supreme Court. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 1180 (1948). The United States Supreme Court has stated there will be state action if "the conduct allegedly causing the

deprivation of a federal right can be fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482, 495 (1982). This test has also been stated as "whether there is a sufficiently close nexus between the state and the challenged action ... so that the action ... may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974).

The United States Supreme Court has held that use of state-sanctioned private remedies or procedures does not rise to the level of state action. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 162–63, 98 S.Ct. 1729, 1736–37, 56 L.Ed.2d 185, 197–98 (1978). "But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565, 576 (1988). In other words "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the fourteenth amendment." *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2756, 73 L.Ed.2d at 498.

The county recorder's actions under chapter 655A do not qualify as state action under the foregoing authorities. Under chapter 655A the recorder merely receives documents given by the mortgagee and does not directly participate in any part of the foreclosure proceedings. *See* Iowa Code § 655A.7 (recorder simply files the documents the parties submit). The recorder also does not exercise any supervisory or discretionary functions in carrying out the duties under chapter 655A. We thus reject Charles' argument that the foreclosure proceeding against Carolyn was defective under the federal due process clause.

Because summary judgment was correctly entered in favor of Hawkeye Bank, the judgment of the trial court is affirmed.

**AFFIRMED.**