**Michael DIGGAN d/b/a Jemi Software, Appellant,**

v.

**CYCLE SAT, INC., Appellee.**

No. 96–1318.

Supreme Court of Iowa.

March 25, 1998.

---

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, and Matthew F. Berry, Clear Lake, for appellant.

Robert R. Rush and Elizabeth D. Jacobi of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

Plaintiff Michael Diggan, a computer programmer, sued his former employer, defendant Cycle Sat, Inc., claiming it breached an implied contract to pay him for developing software, and breached an implied license for use of the software in its "cycle cypher," a downlink system for capturing television commercials sent over satellite. The district court granted Cycle Sat summary judgment, finding the claims barred by the five-year limitation period of Iowa Code section 614.1(4) (1995). On Diggan's appeal, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background Facts and Proceedings.

Cycle Sat operated a satellite communication network used for transmitting commercials nationwide to television stations. To automate the network, it contracted with North Iowa Electronics, Inc. (NIE) to produce the necessary computers. Michael Diggan, an independent computer programmer acquainted with NIE, developed software in May 1987 to command the cycle cypher's receipt of satellite signals. Thereafter Cycle Sat hired him to work for the company. As Cycle Sat's employee, Diggan made modifications and enhancements to the downlink software.

Prior to becoming an employee, Diggan had received from Cycle Sat's parent company a $1500 advance on commissions and royalties for the software he had developed. No express agreement was ever concluded between Diggan and Cycle Sat, however, regarding full payment and royalties for development and use of the software. Thus,

throughout his term as an employee, Diggan refused to give Cycle Sat the crucial source code for the program.

In late 1989, Cycle Sat offered Diggan a lump sum payment of $10,000 for his development interest in the software. Diggan refused the offer. Cycle Sat then pressed the issue by threatening to fire Diggan unless he turned over the software, including the source code. On January 18, 1990, Diggan resigned rather than turn over the code.

By a letter from legal counsel dated January 30, 1990, Cycle Sat notified Diggan of its claimed ownership of the software. It demanded return of all computer data, information, software, and programs in Diggan's possession. Diggan, through counsel, responded on February 5, 1990, demanding that Cycle Sat cease using the software.

■ A. *Federal copyright litigation.* Based on the facts sketched above, Diggan commenced a suit for copyright infringement in federal court. A jury found, by special verdict, that Diggan owned the copyright to the disputed program. It awarded no damages for copyright infringement, however, because Cycle Sat prevailed on its affirmative defense of implied license. Whether Diggan was entitled to compensation for Cycle Sat's use of the license—a state law claim—remained unanswered.[1]

The parties differ somewhat over the impact of the federal jury's verdict. Cycle Sat—in its unsuccessful motion to dismiss Diggan's subsequent suit in state court—claimed the jury's verdict precluded any further action by Diggan to collect compensation from Cycle Sat. We believe, however, the posture of the case at this point closely resembles *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir.1990), a copyright infringement case decided by the United States Court of Appeals for the Ninth Circuit. Because the court's opinion so nicely illuminates the path from complex federal copyright litigation to garden-variety state contract claims, we pause to consider it here.

*Effects* involved a dispute over the copyright to special effects footage incorporated into a horror movie. The movie maker's refusal to pay any more than half the promised amount for the footage sparked the legal controversy. *Effects,* 908 F.2d at 556. As in the case before us, the court concluded that Effects held a copyright to the footage but had nevertheless given the movie maker implied license to use the special effect sequence in the film. *Id.* at 558–59. Citing the leading treatise on copyright law, the court found that "[a] nonexclusive license may be granted orally, or may even be implied from conduct." *Id.* at 558 (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10–36 (1989)). Pertinent to the case before us, the circuit court affirmed a finding of no copyright infringement but noted the controversy was not yet over:

> [P]laintiff doesn't leave this court empty-handed. Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license to Cohen, Effects has given up only one stick from that bundle— the right to sue Cohen for copyright infringement. *It retains the right to sue him in state court on a variety of other grounds, including breach of contract.*

*Id.* at 559 (emphasis added). Diggan, like the plaintiff in *Effects,* left the federal courthouse with valid state law claims to pursue.

B. *State court action.* Five years to the day after Diggan demanded Cycle Sat cease using his software, Diggan sued Cycle Sat in Winnebago County district court. He pleaded two contract theories: (1) breach of implied contract to pay for software development; and (2) breach of "implied license" to use the software. In an amended answer, Cycle Sat alleged that "Diggan's causes of action for payment accrued on or about January 1988, the date of Cycle Sat's first use of the subject software." On Cycle Sat's subsequent motion for summary judgment, the district court ruled that Diggan's claims had accrued no later than January 18, 1990, the date he resigned under pressure from Cycle Sat. Thus, the court concluded, the suit filed

1. Prior to trial in federal court, Diggan belatedly sought to amend his petition to add two state law claims, one for accounting of sums due under an alleged royalties contract, and the other for breach of that contract. The federal judge denied Diggan's motion to amend, concluding Diggan was not foreclosed from pursuing his state law claims in state court.

on February 6, 1995, was commenced outside the limitations period. This appeal by Diggan followed.

## II. Standard of Review.

Our review of an appeal from a summary judgment ruling takes two steps. First, we examine the entire record to determine whether genuine issues of material fact exist; if no factual dispute exists, we determine whether the district court correctly applied the law. *Putensen v. Hawkeye Bank,* 564 N.W.2d 404, 407 (Iowa 1997). Summary judgment is properly granted if the only controversy concerns the legal consequences flowing from undisputed facts. *McClendon v. Beck,* 569 N.W.2d 382, 384 (Iowa 1997). Application of a statutory limitation period to undisputed facts involves a pure question of law. *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.,* 507 N.W.2d 405, 408 (Iowa 1993).

## III. Issues on Appeal.

The parties agree that actions on unwritten contracts must be filed within five years of the date the cause of action accrued. *See* Iowa Code § 614.1(4). This five-year limitation period governing actions on unwritten contracts also applies to actions on implied contracts. *In re Lunt's Trust,* 237 Iowa 1097, 1101, 24 N.W.2d 467, 469 (1946); *Anderson v. Anderson,* 234 Iowa 277, 285, 12 N.W.2d 571, 576 (1944). "The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit." *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 462 (Iowa 1984). In the case of a contract dispute, that right accrues and the limitations period begins running upon breach of the contract. *Brown v. Ellison,* 304 N.W.2d 197, 200 (Iowa 1981).

Our task is to determine the date or dates of accrual for the claims alleged by Diggan. His petition alleged two breaches by Cycle Sat: breach of implied contract to compensate him for writing the program, and breach of implied license for continued use of the copyrighted software without his permission. The district court found that both breaches occurred no later than the date the employment relationship ended. For the reasons that follow, we believe the court was correct with respect to Diggan's claim for development compensation, but not with respect to continued use of the license.

A. *Breach of implied contract.* Cycle Sat employed Diggan because of his expertise in programming the software for use in the downlink system. An implied condition of Diggan's employment was his cooperation in modifying and enhancing the software used to command the cycle cypher. When Cycle Sat asserted ownership of the software and issued the ultimatum to turn over the source code or be fired, Diggan clearly became an aggrieved party with a right to institute a suit aimed at payment for development and previous use of the software. The district court correctly noted that January 18, 1990, the date Diggan's employment terminated, was the last date that he could have provided services arising under the implied contract. Clearly, a breach had occurred. We are convinced of this by Diggan's own answer to interrogatory number fourteen, wherein he was asked to "[s]pecify the terms of the alleged contract . . . including which terms are alleged to have been performed and/or breached, if any." Diggan answered:

> The terms of the contract were that Cycle–Sat would pay a royalty for use of the software Plaintiff created. Cycle–Sat breached the contract when it refused to pay royalties and told the Plaintiff to turn over the source code or be fired.

We conclude the district court properly granted summary judgment to Cycle Sat on Diggan's claim for remuneration and royalties during the employment period, which predated by over five years the filing of his petition.

B. *Breach of implied license after termination.* Diggan's petition also made claims that arguably accrued on and after February 5, 1990, placing them within the statute of limitations period. When Diggan left Cycle Sat, the company retained copies of the disputed software. Moreover, Diggan delivered the source code to Cycle Sat's attorneys in July 1991 during discovery in the

federal action. Diggan maintains that his copyrighted software continues to be used by Cycle Sat to command the cycle cypher. At oral argument, counsel for Cycle Sat asserted that the record was silent on whether the software is still in use.

 We believe a genuine issue of material fact exists as to whether Cycle Sat has exceeded the scope of the implied license for use of the software. An implied license, like an implied contract, depends on the parties' conduct. *Hunter v. Union State Bank*, 505 N.W.2d 172, 177 (Iowa 1993); *see Effects*, 908 F.2d at 559 n. 7 (noting an implied license is "a creature of law, much like any other implied-in-fact contract"). "The copyright owner ... has the exclusive rights to copy, distribute or display the copyrighted work publicly." *Effects*, 908 F.2d at 556. Because Diggan retained exclusive control over his copyrighted software, subject to the implied license, the terms of the license take on critical importance. There is no question that Diggan permitted use of the software during the harmonious employment relationship. After he quit under pressure, however, he demanded that Cycle Sat cease using the program. Assuming Cycle Sat has used the copyrighted software since February 5, 1990, it has done so each time without paying royalties to Diggan.

Questions remain concerning the extent of use of the software during the statutory period. It is beyond dispute that permission for use of the software terminated with Diggan's letter of February 5, 1990, five years before suit was commenced. Thus genuine issues of material fact preclude summary judgment for Cycle Sat on the issue of royalties owed within the statutory period.

### IV. Summary.

We have considered Cycle Sat's other arguments for upholding summary judgment and find them to be without merit. We conclude the district court correctly entered summary judgment for Cycle Sat on Diggan's implied contract claim for software development and royalties earned prior to and during the course of his employment. Diggan, however, has produced sufficient evidence to generate a fact question on the

material issue of whether Cycle Sat exceeded the scope of the implied license after he demanded that use be stopped. We cannot say as a matter of law that the five-year limitation period of section 614.1(4) has been tolled on that claim. Thus we affirm the district court's judgment in part, reverse it in part, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**