# IN THE SUPREME COURT OF IOWA

No. 38 / 05-0463

Filed July 27, 2007

**AMES RENTAL PROPERTY
ASSOCIATION**,

Appellant,

vs.

**CITY OF AMES**,

Appellee.

---

Appeal from the Iowa District Court for Story County, William J. Pattinson, Judge.

Landlord group appeals district court decision holding city's zoning ordinance does not violate equal protection. **AFFIRMED.**

Thomas G. Fisher, Jr. of Parrish Kruidenier Moss Dunn Boles Gribble Cook & Fisher, L.L.P., Des Moines, for appellant.

Kirke C. Quinn of Jordan & Quinn, P.C., Boone, and John R. Klaus, City Attorney, Ames, for appellee.

**STREIT, Justice.**

In an effort to stem the flow of students into residential areas, Ames, the home of Iowa State University, passed a zoning ordinance which only permits single-family dwellings in certain areas of the city. For purposes of the ordinance, a "family" is any number of related persons or no more than three unrelated persons. A landlord association brought a declaratory judgment against the City claiming the ordinance violates the equal protection clauses of the United States Constitution and the Iowa Constitution. The district court granted summary judgment in favor of Ames because it found the ordinance was rationally related to a legitimate government interest. We affirm.

### I.      Facts and Prior Proceedings

Ames Rental Property Association (hereinafter ARPA) is a corporation comprised of people who own residential real estate within the city limits of Ames. The members' properties include various houses located within areas the City has zoned for single-family dwellings. While many of these houses are sufficiently large to comfortably accommodate more than three people, section 29.201(62) of the Ames Municipal Code operates to prohibit ARPA members from leasing a given house, regardless of its size, to more than three unrelated persons.

Chapter 29 of the Ames Municipal Code is a comprehensive and detailed zoning ordinance enacted by the city in April 2000 to regulate the use of real estate within the City's boundaries. Section 29.701(1) restricts use of property in areas designated "residential low density" zones to "primarily single family dwellings."[1]

---

[1]A two-family dwelling, i.e., a building that contains two dwelling units, each designed for separate and independent occupancy, is allowable in residential low-

Section 29.201(51) defines a single-family dwelling as "any building consisting of no more than one dwelling unit, designed for and occupied exclusively by one family." The term "dwelling unit" is defined as "any building or a portion thereof which contains living facilities, including provisions for sleeping, eating, meal preparation and a bathroom."[2] Ames Mun. Code § 29.201(54).

The controversy in this case focuses on the definition of "family" as provided by section 29.201(62). A "family" means:

> [A] person living alone, or any of the following groups living together as a single nonprofit housekeeping unit and sharing common living, sleeping, cooking, and eating facilities:
>
> (a)    Any number of people *related* by blood, marriage, adoption, guardianship or other duly-authorized custodial relationship;
>
> (b)    Three *unrelated* people;
>
> (c)    Two *unrelated* people and any children *related* to either of them;
>
> . . . .

(Emphasis added.)

ARPA members have been cited with violating the zoning ordinance for renting houses to more than three unrelated persons. Members' tenants have also been cited.

In February 2004, ARPA filed a declaratory judgment in Story County. It requested Ames Municipal Code section 29.201(62), defining "family" for purposes of determining the use of houses within a "single

---

density zones if it preexisted the enactment of chapter 29. *See* Ames Mun. Code §§ 29.201(53), .701(2).

[2]Excepted from this definition are "hotels, manufactured homes, nursing homes, residential corrections facilities, rooming houses, sororities or fraternities, or supervised group homes." Ames Mun. Code § 29.201(54).

family" zoning district, be declared in violation of the equal protection clauses and the takings clauses of the Iowa Constitution and the United States Constitution. Ames denied ARPA's allegations.

Ames filed a motion for summary judgment. The district court granted Ames's motion and dismissed ARPA's petition. ARPA appealed.

On appeal, ARPA asserts only its equal protection claim under both the Iowa and United States Constitutions.

## II. Scope of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tetzlaff v. Camp*, 715 N.W.2d 256, 258 (Iowa 2006) (citing *Keokuk Junction Ry. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000)). ARPA acknowledges there are no facts in dispute. Thus, on review we must determine whether the district court correctly applied the law. *Diggan v. Cycle Sat, Inc.*, 576 N.W.2d 99, 102 (Iowa 1998) (citing *Putensen v. Hawkeye Bank*, 564 N.W.2d 404, 407 (Iowa 1997)). We review constitutional claims de novo. *Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002).

## III. Merits

## A. Federal Constitution

ARPA argues Ames's zoning ordinance violates both the Iowa and Federal Constitutions. However, the Supreme Court has examined a more restrictive ordinance and held it did not violate the United States Constitution. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S. Ct. 1536, 1541, 39 L. Ed. 2d 797, 804 (1974) (holding a zoning ordinance limiting occupancy of single-family homes to any number of related persons or not more than two unrelated persons does not offend the

Equal Protection Clause of the United States Constitution). Undeterred, ARPA argues the Supreme Court will likely overturn *Belle Terre* if given the opportunity to do so. We will not be so presumptuous as to predict how the Supreme Court would rule if presented with this case. *Belle Terre* is still good law. Ames's zoning ordinance does not violate the Equal Protection Clause of the United States Constitution.

**B.    Iowa Constitution**

Nevertheless, we must still consider the ordinance under the Iowa Constitution. While the Supreme Court's judgment under the federal Equal Protection Clause is persuasive, it is not binding on this court as we evaluate the City's ordinance under the Iowa Constitution. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 5 (Iowa 2004).

The Iowa Constitution guarantees "[a]ll laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. 1, § 6. This provision "means similarly situated persons must receive similar treatment under the law." *Grovijohn*, 643 N.W.2d at 203-04 (citations omitted).

The first step of an equal protection claim is to identify the classes of similarly situated persons singled out for differential treatment. *Id.* at 204. Here, the classes are related persons versus unrelated persons living in Ames's single-family zones. ARPA members allege Ames's ordinance violates the rights of their tenants and would-be tenants to equal protection.[3]

---

[3]Normally, a party may only assert his own rights. *Krull v. Thermogas Co.*, 522 N.W.2d 607, 614 (Iowa 1994). However, there is an exception to this general rule where the challenger's interest is as great as the persons whose rights are alleged to be

If the claimed dissimilar treatment does not involve a suspect class or a fundamental right, any classification made by the statute need only have a rational basis. *Id.* ARPA concedes "[t]he district court properly concluded that the rational basis test should be applied." *See Belle Terre*, 416 U.S. at 6–7, 94 S. Ct. at 1539–40, 39 L. Ed. 2d at 802–03 (finding zoning ordinance limiting number of unrelated persons per household involved neither a suspect class nor a fundamental right); *State v. Seering*, 701 N.W.2d 655, 664 (Iowa 2005) (stating freedom of choice in residence "is not a fundamental interest entitled to the highest constitutional protection").

Under the rational basis test, we must determine whether the ordinance in question is rationally related to a legitimate governmental interest. *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 7–8. Under this deferential standard, the zoning ordinance is valid unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious. *Id.* at 8. A statute or ordinance is presumed constitutional and the challenging party has the burden to "negat[e] every reasonable basis that might support the disparate treatment." *Id.* The City is not required or expected to produce evidence to justify its legislative action. *Heller v. Doe*

---

violated. *Id.* Here, ARPA members have a legitimate interest in Ames's ordinance because they are being fined for violating the ordinance and presumably the ordinance makes the homes more difficult to rent. A direct economic injury through constriction of the market and imposition of sanctions is a sufficient injury to satisfy standing. *Craig v. Boren*, 429 U.S. 190, 194, 97 S. Ct. 451, 455, 50 L. Ed. 2d 397, 405 (1976) (holding bar owner had standing to challenge state statute prohibiting males under the age of twenty-one from buying 3.2% beer while permitting the sale to women ages eighteen years and older because the bar owner incurred a "direct economic injury"). Thus, ARPA members have standing in representative capacity to raise the potential rights of unrelated persons affected by Ames's ordinance. *Krull*, 522 N.W.2d at 614; *see also Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S. Ct. 1361, 1368, 31 L. Ed. 2d 636, 645 (1972) (stating an organization whose members are injured may represent those members in a lawsuit).

*by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257, 271 (1993). "A legislative judgment is presumed to be supported by facts known to the [city counsel], unless facts judicially known or proved preclude that possibility." *Egan v. United States*, 137 F.2d 369, 375 (8th 1943) (citations omitted).

In the context of zoning, legitimate government interests include "promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1 (2003). Here, Ames articulated several bases for the zoning ordinance: "promot[ing] a sense of community, sanctity of the family, quiet and peaceful neighborhoods, low population, limited congestion of motor vehicles and controlled transiency." In *Belle Terre*, the Supreme Court found similar interests valid:

> The police power is not confined to the elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Belle Terre*, 416 U.S. at 9, 94 S. Ct. at 1541, 39 L. Ed. 2d at 804. We agree governing bodies have a legitimate interest in promoting and preserving neighborhoods that are conducive to families—particularly those with young children. *See Moore v. City of E. Cleveland*, 431 U.S. 494, 503, 97 S. Ct. 1932, 1938, 52 L. Ed. 2d 531, 540 (1977) (noting the Supreme Court's prior decisions established the Federal Constitution "protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition"); *Callender v. Skiles*, 591 N.W.2d 182, 191 (Iowa 1999) (acknowledging "promoting the sanctity and stability of the family" is a legitimate government interest). Quiet neighborhoods with a stable population and low traffic are laudable goals. Ames's objectives are therefore valid.

Next, we must determine whether the City's objectives are "rationally related" to the zoning ordinance in question. ARPA argues the ordinance "does not address the purposes relied upon by the city." ARPA explains:

> [A]ny legitimate goal that the City seeks to achieve can be achieved by a narrower, more direct ordinance. The ordinance as it is presently adopted is under-inclusive because it allows related individuals to live in large numbers in small areas and create noise, litter, and use or park an excessive number of cars. At the same time it is over-inclusive because it prohibits unrelated residents who might live in quite reasonable numbers for the square footage of the house and not create noise, litter, and may not use or park an excessive number of cars.

However, under the rational basis test, we do not require the ordinance to be narrowly tailored. "If the classification has some 'reasonable basis,' it does not offend the constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Scott County Prop. Taxpayers Ass'n, Inc. v. Scott County*, 473 N.W.2d 28, 31 (Iowa 1991) (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S. Ct. 453, 459, 66 L. Ed. 2d 368, 376 (1980)). For legislation to be violative of the Iowa Constitution under the rational basis test, the classification must involve "*extreme* degrees of overinclusion and underinclusion in relation to any particular goal." *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10 (emphasis added).

This requires more than imagining extreme examples of groups of people who do or do not offend the goals of the zoning ordinance. Sure, the ordinance would allow the Beverly Hillbillies[4] to live in a single-family

---

[4]The Beverly Hillbillies was a popular sitcom on CBS from 1962 through 1972. The show's main character was an Ozarks mountaineer who struck it rich upon the discovery of oil on his land. Thereafter, he moved to Beverly Hills with his mother-in-

zone while prohibiting four judges from doing so. However, neither hypothetical is typical of reality.[5] City counsel members are permitted to legislate based on their observations of real life.

In the present case, we find the relationship between the ordinance and the City's goals is neither arbitrary nor capricious. Quite candidly, Ames states "[i]t cannot be ignored that Ames is a university campus city and, therefore, experiences typical secondary effects of mass student congestion."[6] Based on its experience with students living off campus, the Ames city council made a reasonable policy decision to limit to three the number of unrelated persons who may reside in a single-family dwelling in certain areas. It did so because groups of unrelated persons typically have different living styles in comparison to groups of related persons. *See Dinan v. Bd. of Zoning Appeals*, 595 A.2d 864, 870 (Conn. 1991) (noting a group of college students is less likely to become involved in the neighborhood and community in comparison to a typical family because of its short-term living arrangement). For example, although related persons may live together in large numbers, they normally live together in a more permanent status and remain in one place for a longer period of time. In contrast, groups of unrelated persons typically live

---

law, his daughter, and his nephew. High jinks ensued when the clan refused to conform to privileged society.

[5]Offering examples of overinclusion and underinclusion, ARPA stated "a fifteen-member family could live in a tiny one-bedroom house with fifteen cars parked in the streets and driveways, while four unrelated people cannot live in a fifteen bedroom house with no cars at all."

[6]Many of the cases addressing similar ordinances involve college towns. *See State v. Champoux*, 555 N.W.2d 69 (Neb. Ct. App. 1996) (Lincoln, Nebraska, home of the University of Nebraska); *Town of Durham v. White Enters., Inc.*, 348 A.2d 706 (N.H. 1975) (Durham, New Hampshire, home of the University of New Hampshire); *City of Brookings v. Winker*, 554 N.W.2d 827 (S.D. 1996) (Brookings, South Dakota, home of South Dakota State University); *Anderson v. Provo City Corp.*, 108 P.3d 701 (Utah 2005) (Provo, Utah, home of Brigham Young University).

together as roommates. Such arrangements are relatively short term and normally involve young adults. These persons tend not to establish roots in the community nor do they provide playmates for their neighbors' children. Moreover, large numbers of young adults living together typically attract friends, which create additional noise and traffic. By limiting the number of unrelated persons who may live together, Ames's ordinance furthers the City's goal of creating family-oriented neighborhoods that are safe and quiet for young children. It is also reasonable for the city council to conclude density will be lessened by the ordinance. Therefore, Ames's ordinance does not violate the equal protection clause of the Iowa Constitution.[7]

---

[7]*See Jones v. Wildgen*, 320 F. Supp. 2d 1116, 1131–32 (D. Kan. 2004) (holding statute prohibiting more than three unrelated persons from renting home in single-family zoning district does not violate the Equal Protection Clause of the United States Constitution); *Rademan v. City & County of Denver*, 526 P.2d 1325, 1327–28 (Colo. 1974) (holding ordinance restricting certain areas of the city to single-family occupancy does not violate the Equal Protection or Due Process clauses of the Federal Constitution); *Dinan*, 595 A.2d at 871 (holding ordinance which allows any number of related persons to occupy a home and up to two roomers in addition to the family of an occupant does not violate the equal protection or due process clauses of the Connecticut Constitution); *Hayward v. Gaston*, 542 A.2d 760, 770 (Del. 1988) (holding ordinance which prohibits more than four unrelated persons from living together in single-family residential zone does not violate the Equal Protection Clause of the Federal Constitution); *Champoux*, 555 N.W.2d at 74 (holding ordinance limiting to three the number of unrelated persons who may live together does not violate the due process clause of the Nebraska Constitution or the rights of association and privacy provided by the Federal Constitution); *Town of Durham*, 348 A.2d at 709 (holding ordinance which restricts the number of unrelated persons who may live in different classes of dwelling units based on habitable square footage is constitutional); *City of Brookings*, 554 N.W.2d at 831–32 (holding ordinance which prohibits more than three unrelated adults to occupy a dwelling unit does not violate either equal protection or due process clauses of the South Dakota Constitution); *see also Anderson*, 108 P.3d at 710 (holding zoning ordinance which allows property owners in some single-family zoning residential zones near university campus to rent accessory apartments (located in basement or upper floors) to up to four related or unrelated individuals on condition owner resides in primary dwelling does not violate owners' constitutional right to equal protection or right to travel, and is not an invalid restraint on alienation).

Certainly this ordinance is imprecise and based on stereotypes. Nevertheless, it is a reasonable attempt to address concerns by citizens who fear living next door to the hubbub of an "Animal House."[8] Significantly, the ordinance is not limited to college students nor does it bar them from living in single-family zones. The City's definition of "family" is quite flexible and expansive enough to encompass unmarried couples and groups of three unrelated persons. *See Champoux*, 555 N.W.2d at 74 (noting ordinance prohibiting four or more unrelated persons from living together "is expansive enough to allow numerous other household relationships in addition to that of the traditional family"). Other cases striking down ordinances which limit the number of unrelated persons who may live together have done so applying other constitutional provisions, using a heightened level of scrutiny, or addressing a more restrictive ordinance.[9]  ARPA only challenges the

---

[8]*See* Animal House (Universal Pictures 1978) (depicting the hilarious missteps and misdeeds of the Delta House fraternity members at Faber College).  The City's definition of "family" specifically excludes "[a]ny society, club, fraternity, sorority, association, lodge, . . . or like organization."  Ames Mun. Code § 29.201(62)(e)(i)(a).

[9]*See City of Santa Barbara v. Adamson*, 610 P.2d 436, 442 (Cal. 1980) (holding ordinance limiting to five the number of unrelated people who may live in single-family zones violates fundamental right to privacy under the California Constitution); *College Area Renters & Landlord Ass'n v. City of San Diego*, 50 Cal. Rptr. 2d 515, 520 (Ct. App. 1996) (holding zoning ordinance which limited the number of adult occupants of a rented one-family dwelling based on square footage of bedroom areas, the number and size of bathrooms, and the amount of off-street parking violates the equal protection clause of the California Constitution because the ordinance makes an irrational distinction between tenant-occupants and owner-occupants); *Charter Twp. of Delta v. Dinolfo*, 351 N.W.2d 831, 841 (Mich. 1984) (holding ordinance which limits the occupation of a single-family residence to two unrelated persons or any number of related persons violates the due process clause of the Michigan Constitution); *State v. Baker*, 405 A.2d 368, 369–70 (N.J. 1979) (holding zoning ordinance which allows any number of related persons to live together in a single-family home or not more than four unrelated persons violates right to privacy and due process under the New Jersey Constitution because the distinction between related and unrelated persons does not bear a *substantial relationship* to the effectuation of the city's goal of preserving family character of neighborhood); *McMinn v. Town of Oyster Bay*, 488 N.E.2d 1240, 1243 (N.Y. 1985) (holding single-family zoning ordinance allowing any number of related persons to live together or not more than two unrelated persons who both must be 62 years of age or older violates due process clause of the New York Constitution).

ordinance on equal protection grounds and agrees rational basis is the proper standard. *See Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 5 (applying the same analysis under the state equal protection provision as applied under the federal equal protection clause but reserving the right to employ a different analytical framework under state constitutional provisions).

ARPA may be correct that this ordinance will do little to further the City's goals. Nevertheless, it is the City's prerogative to fashion remedies to problems affecting its residents. If the ordinance proves to be ineffective, then the elected city counsel may change course and amend or repeal it. The court's power to declare a statute or ordinance unconstitutional is tempered by the court's respect for the legislative process. Under the rational basis test, we must generally defer to the city counsel's legislative judgment. The Supreme Court has said:

> The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 942–43, 59 L. Ed. 2d 171, 176 (1979); *accord State v. Simmons*, 714 N.W.2d 264, 277 (Iowa 2006).

## IV. Conclusion

We find Ames's zoning ordinance, which allows an unlimited number of related persons to live together while limiting to three the number of unrelated persons in single-family zones, is rationally related

to the government's interest in providing quiet neighborhoods. Accordingly, it does not offend the equal protection clause of either the Iowa Constitution or the United States Constitution.

**AFFIRMED.**

All justices concur except Wiggins, Hecht, and Appel, JJ., who dissent.

#38/05-0463, *Ames Rental Property Ass'n v. City of Ames*

**WIGGINS, Justice (dissenting).**

I respectfully dissent. I agree Ames Municipal Code section 29.201(62) does not violate the Equal Protection Clause of the United States Constitution. However, I disagree with the majority's conclusion that the ordinance does not violate the equal protection clause of the Iowa Constitution.

The majority relies on *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S. Ct. 1536, 1541, 39 L. Ed. 2d 797, 804 (1974), to validate Ames's purpose behind legislating section 29.201(62). However, it is the exclusive prerogative of this court, not the United States Supreme Court, to determine the constitutionality of Iowa statutes challenged under the Iowa Constitution. *Callender v. Skiles*, 591 N.W.2d 182, 187 (Iowa 1999). "[T]his court's independent application of the rational basis test might result in a dissimilar outcome from that reached by the Supreme Court in considering the federal constitutional claim." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6 (Iowa 2004). Even if the Iowa Constitution and the United States Constitution are similarly or identically phrased we can independently consider constitutional arguments and decline to follow United States Supreme Court precedent. *Id.* (citing William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 500 (1977)). "This result is particularly possible in view of 'the ill-defined parameters of the equal protection clause.'" *Id.* (quoting *Miller v. Boone County Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986)).

In analyzing an equal protection challenge under the Iowa Constitution we must first determine whether the Ames city council had

a valid reason to treat related persons differently from unrelated persons in its zoning ordinance. *Id.* at 7. In doing so, we must not only ask whether the ordinance serves a legitimate government purpose, but also whether the claimed state interest is realistically conceivable. *Id.* Second, we must decide whether the city's claimed reason has a basis in fact. *Id.* at 8. Lastly, we must consider whether the relationship between the classification, i.e., the differences between related and unrelated persons, and the purpose of the classification is so weak that the classification must be viewed as arbitrary. *Id.*

Under the Iowa Constitution we employ an overinclusive-underinclusive dichotomy analysis to determine whether legislation survives rational basis scrutiny. *Compare id.* at 10 (finding the legislative purpose behind a taxation provision cannot withstand rational basis review because of the extreme degrees of overinclusion and underinclusion), *and Bierkamp v. Rogers*, 293 N.W.2d 577, 584 (Iowa 1980) (finding a classification based on extreme degrees of overinclusion and underinclusion cannot pass rational basis review), *with Vance v. Bradley*, 440 U.S. 93, 108, 99 S. Ct. 939, 948, 59 L. Ed. 2d 171, 183 (1979) (demonstrating the United States Supreme Court's tolerance for laws that are overinclusive and underinclusive when conducting a rational basis review). If we find "a classification involves extreme degrees of overinclusion and underinclusion in relation to any particular goal," then that provision fails rational basis review. *Bierkamp*, 293 N.W.2d at 584; *see also Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10. For reasons stated below, I find Ames's zoning ordinance contains extreme degrees of overinclusion and underinclusion. Accordingly, the ordinance violates the equal protection clause of the Iowa Constitution.

As the majority states, Ames's purpose in treating related persons differently from unrelated persons is to " 'promot[e] a sense of community, sanctity of the family, quiet and peaceful neighborhoods, low population, limited congestion of motor vehicles and controlled transiency.' " Although Ames has a legitimate purpose in promoting the quality and character of its neighborhoods, I cannot accept that distinguishing between related and unrelated persons in a zoning law is rationally related to the promotion of a sense of community, sanctity of the family, quiet and peaceful neighborhoods, low population, limited congestion of motor vehicles, and controlled transiency.

Ames contends these interests will be advanced if groups of more than three unrelated persons are not allowed to live in a home together. However, the record is devoid of any evidence or argument that a group of more than three related persons will portray different or desirable behavior or living patterns than a group of more than three unrelated persons.

I find the ordinance regulates where no regulation is needed and fails to regulate where regulation is needed. The ordinance is both overinclusive and underinclusive. Further, the degree to which this over- and under-inclusiveness is present is extreme because it is irrational to suppose the type of relationship persons residing in a home have to each other has any rational bearing on the character or behavior of those persons. *See Charter Twp. of Delta v. Dinolfo*, 351 N.W.2d 831, 841-42 (Mich. 1984) (holding with regard to a similar housing provision "[a] greater example of over- and under-inclusiveness we cannot imagine"). This irrationality and the extreme over- and under-inclusiveness of the

ordinance is easily illustrated by examining family and societal dynamics in the twenty-first century.

Families today, especially ones with teenagers, are just as likely as a group of unrelated persons to have numerous vehicles parked outside their home. In fact, in a college community like Ames, students, the unrelated persons most targeted by the ordinance, are more likely to rely on alternative means of transportation—public transportation, foot, or bicycle—than a vehicle. "Manifestly, restricting occupancy of single-family housing based generally on the biological or legal relationships between its inhabitants bears no reasonable relationship to the goals of reducing parking and traffic problems, controlling population density and preventing noise and disturbance." *McMinn v. Town of Oyster Bay*, 488 N.E.2d 1240, 1243 (N.Y. 1985) (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 499-500, 97 S. Ct. 1932, 1935-36, 52 L. Ed. 2d 531, 537-38 (1977); *City of Santa Barbara v. Adamson*, 610 P.2d 436, 441 (Cal. 1980); *State v. Baker*, 405 A.2d 368, 373 (N.J. 1979)).

Further, it is irrational to relate a peaceful neighborhood with a neighborhood populated solely by families, or three or less unrelated persons. As another court has articulated under a similar ordinance, "twenty male cousins could live together, motorcycles, noise, and all, while three unrelated clerics could not." *Charter Twp. of Delta*, 351 N.W.2d at 841. Or, that an ordinance of this type would prohibit a group of four unrelated " 'widows, widowers, older spinsters or bachelors or even of judges' from residing in a single unit within the municipality." *Baker*, 405 A.2d at 371 (quoting *Kirsch Holding Co. v. Borough of Manasquan*, 281 A.2d 513, 517 (N.J. 1971)).

This ordinance also has no rational relationship to population control. A family of any size can reside in a home in Ames, whereas only three unrelated persons can live together. The majority does not cite to any evidence that supports its conclusion that population "density will be lessened by the ordinance." Instead, it seems to this dissenter that it is irrational and contradictory to find the ordinance, which allows one group to house an unlimited number of related persons, would in any way reduce the overall population density.

Further, it is irrational to suppose this ordinance promotes a quiet and peaceful neighborhood. This ordinance does not distinguish between a raucous family that plays loud music at their home, has large parties at their home, and houses more vehicles than persons living in their home, and a house of four single, quiet, homebodies whose only knowledge of wild parties and loud music comes from watching television. As another court summarizes, housing ordinances of this sort create an irrational discrepancy in treatment because a tenant-occupied house whose "residents happen to be the quiet, neat type who use bicycles as their means of transportation" are subject to the ordinance; "whereas the owner-occupied house is not subject to the ordinance, even though its residents happen to be of a loud, litter-prone, car-collecting sort." *Coll. Area Renters & Landlord Ass'n v. City of San Diego*, 50 Cal. Rptr. 2d 515, 521 (Cal. Ct. App. 1996).

In today's modern society families are more mobile, especially in a college community, where professors, visiting professors, graduate students, and administrators are frequently moving to new universities to continue or further their studies and careers. These university families come in and out of Ames, yet under this ordinance their

transitory nature is not a factor. *See City of Des Plaines v. Trottner*, 216 N.E.2d 116, 119 (Ill. 1966). The majority dismisses this fact and finds students or other unrelated persons are the only transitory or mobile residents in a university town.

Instead of promoting families, this ordinance disadvantages those most likely to live with roommates—the poor and the elderly. *See Holy Name Hosp. v. Montroy*, 379 A.2d 299, 302 (N.J. 1977). The ordinance distinguishes between acceptable and prohibited uses of property by reference to the type of relationship a person has with those they live with, not by the conduct of those that live in the residence.

Ames claims it is promoting a sense of community with this ordinance: But whose community is Ames promoting? Is Ames only interested in promoting traditional families or those who can afford to live in a home without roommates—the wealthy and the upper-middle class? It is irrational for a city to attempt to promote a sense of community by intruding into its citizens' homes and differentiating, classifying, and eventually barring its citizens from the community solely based on the type of relationship a person has to the other persons residing in their home.

Although the majority may classify these examples of overinclusive and underinclusive applications of the ordinance as extreme, they do so in the context of social norms as they existed thirty-three years ago when the Supreme Court decided *Belle Terre*. In that era the typical household consisted of a mother, a father, and children, with one breadwinner and one vehicle. In today's society this is no longer the case. Today it is not unusual to see a group of unrelated single persons living together and sharing expenses. The simple fact is that in today's modern society the

overinclusive and underinclusive examples identified in this dissent and by other courts that have found similar ordinances unconstitutional are closer to the norms than to the extremes.

If Ames wants to regulate population it can do so by reference to floor space and facilities. Noise and conduct can be controlled with nuisance and criminal laws. Traffic and parking can be controlled by limiting the number of vehicles to all households or with off-street parking regulations. *See Coll. Area Renters & Landlord Ass'n,* 50 Cal. Rptr. 2d at 521.

In sum, I find the ordinance does not reasonably and rationally further Ames's stated legislative goal and is therefore unconstitutional under Iowa law.

Hecht and Appel, JJ., join this dissent.