153 N.J. Super. 181 (1977)
379 A.2d 299
HOLY NAME HOSPITAL, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
GARY L. MONTROY, BUILDING INSPECTOR OF THE TOWNSHIP OF TEANECK AND THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF TEANECK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 23, 1977.
*182 Mr. Brian T. Campion for plaintiff (Messrs. Breslin & Breslin, attorneys).
Mr. Jacob Schneider for defendants (Messrs. Schneider, Schneider & Behr, attorneys).
SMITH, J.C.C., Temporarily Assigned.
This suit was instituted by Holy Name Hospital pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50 et seq., in response to a complaint filed against it by the Teaneck Building Inspector. Prosecution in the municipal court has been stayed pending the outcome of this litigation. The specific regulation involved is a section of the Teaneck Code which limits permissible residential use in a one family zone to:
(a) Dwelling occupied by one family or no more than three persons not related by blood, marriage or adoption, occupying the dwelling as a single, non-profit housekeeping unit; provided however, that if any of the occupants be the owner of the premises, the number of related or unrelated persons that may reside therein shall be limited only by other chapters of the Township Code. As used herein, the term "owner" shall be limited to a natural person who, alone or jointly or severally with other natural persons, has legal and beneficial title to the premises. [Township of Teaneck New Jersey Mun. Code, Art. V, par. 1; emphasis supplied]
*183 According to the stipulated facts, Holy Name Hospital is the owner of three separate houses, each in close proximity to the other. Only nuns who work in various capacities at the hospital or teach in nearby institutions and parochial schools are permitted to live in these houses. Maintenance and upkeep expenses are paid to the hospital by the Sisters of St. Joseph of the Peace. There is no evidence of any annoying or disruptive behavior. On May 17, 1976, the date of the complaint, there were four occupants of 737 Grange Road, four residents of 717 Norma Court and seven inhabitants of 655 Mildred Street. The violation occurs exclusively by virtue of the fact that more than three unrelated nuns happen to be living together under the same roof.
Thus the narrow issue to be decided is whether a municipality may use its zoning power to restrict residential occupancy solely on the basis of relationship by blood, marriage or adoption.
When initially faced with this problem, New Jersey trial courts, like authorities in other states, were divided in their opinions.[1] But once the appellate level was reached, this type of regulation was invalidated on the basis that it unreasonably restricted delineation of permissible occupants. *184 Kirsch Holding Co. v. Manasquan, 59 N.J. 241 (1971); Gabe Collins Realty, Inc. v. Margate City, 112 N.J. Super. 341 (App. Div. 1970). Both cases dealt with attempts by seashore resort communities to preserve quiet seclusion in the face of massive group rentals. They chose to combat the problem by promulgation of zoning ordinances. In deciding Kirsch our Supreme Court questioned whether the enabling Zoning Act delegated to municipalities the authority to exclude classes of occupants. Rather than decide this issue, it chose to follow Gabe Collins and based its conclusion on the unreasonableness of such provisions. The limitation of the number of permissible occupants based upon relationship by blood or marriage precluded so many harmless dwelling uses that it was deemed to be sweepingly excessive and, therefore, legally unreasonable. Like all police power legislation, zoning ordinances must
* * * not be unreasonable, arbitrary or capricious, the means selected must have a real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated. [Kirsch Holding Co. v. Manasquan, supra, 59 N.J. at 251]
The township asserts that this New Jersey Supreme Court ruling was subsequently overturned by the United States Supreme Court in Belle Terre Village v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).[2] Belle Terre is a tiny village of about 220 homes on Long Island's north shore where land use is restricted exclusively to one-family *185 dwellings. The rental of homes to groups of nearby university students inspired enactment of an ordinance which prohibits occupancy by more than two unrelated persons.[3] Mr. Justice Douglas, speaking for the majority, recognized that
* * * [a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one * * *. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. [Id. at 9, 94 S.Ct. at 1541, 39 L.Ed.2d at 804]
But Belle Terre's bottom-line holding reads only that occupancy restrictions based upon biological family ties do not violate federal First Amendment rights. Where such ordinances are valid under state law, they will not be disturbed by the federal courts. It is now abundantly clear that the New Jersey guarantees of due process and equal protection may be more demanding and are to be more broadly construed than those of the Federal Constitution. Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 67 N.J. 151, 174-75 (1975), cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); Robinson v. Cahill, 62 N.J. 473, 490-92 (1973).
The impact of Belle Terre on New Jersey case law was discussed in Berger v. State, 71 N.J. 206 (1976). That case involved the operation of a group home for handicapped preschool children by the Department of Institutions and Agencies in a Mantoloking residential district. In the attempt to restrain use of this facility, it was asserted that the children in residence did not constitute an ordinance-defined consanguineous family. Although the zoning aspect of the decision was based upon immunity of state agencies *186 from municipal zoning requirements, the court decided to speak further on the rights of municipalities in this area. It traveled the same path as Belle Terre to the point of recognizing the legitimacy of local zoning to preserve a family-style of living, but then our Supreme Court and the United States Supreme Court parted company:
When the Mantoloking ordinance defining "family" as those persons related by blood, marriage or adoption is measured against the demands of due process, it is clear that the regulation must fall. It so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved. As such, we cannot conclude that the definition of "family" is reasonable. [Berger v. State, supra at 224]
In addition to this judicial history, the ordinance in question must be considered in the light of other factors. According to the most recent statistics compiled by the United States Census Bureau, fundamental changes are occurring in marriage and family living. Different types of housekeeping units are replacing the traditional family as defined by the Teaneck Code. The number of couples living together out of wedlock is steadily increasing while the divorce rate soars.[4] Households consisting of low-income individuals, unmarried to each other but banded together to share housing costs, are no longer uncommon. See U.S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (voiding a section of the Food Stamp Act which differentiated between individuals living together on the basis of marital status). Rapid increase of the elderly population has brought a critical shortage of *187 housing suitable to meet the needs of that segment of the population. Dependent on limited and fixed means,
* * * [t]hey may have lost friends and relatives of comparable age and background. As a result, readily accessible companionship becomes increasingly important to them. In addition, the fact that children may have moved away sometimes causes elderly persons to seek an age-homogeneous environment to replace broken family ties. [Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 270 (1976)]
The nuns in this case, as well as other members of recognized religious orders, must be included in this partial list of harmless voluntary families.
New Jersey continues to suffer from a long-standing critical shortage of housing. Among the most adversely affected are the poor and the elderly. Marini v. Ireland, 56 N.J. 130, 146 (1970); Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., supra, 67 N.J. at 203-05 (Pashman, J., concurring); Shepard v. Woodland Tp. Comm. & Planning Bd., 71 N.J. 230, 239 (1976); Taxpayers Ass'n. of Weymouth Tp. v. Weymouth Tp., supra, 71 N.J. at 268. In the face of this, Teaneck continues to zone approximately 90% of its land for one-family residential use.[5] The problem is further compounded by superimposition of a restriction which prohibits rental to more than three unrelated persons. The Township of Teaneck is converted into a private club, and application for admission must be accompanied by a validated marriage certificate. The "wrong kind of people," unable to find decent housing, need not apply no matter how many suitable homes lie vacant and available. Changing times continue to make the Teaneck ordinance increasingly restrictive and legally unreasonable.
*188 Having determined that the portion of Art. V, par. 1, of the Teaneck Code which limits occupancy on the basis of biological relationship is void, we must now consider the effect of this ruling upon the remainder of the ordinance. Traditionally such a finding would simply result in the striking down of the entire offensive regulation. See Kirsch Holding Co. v. Manasquan, supra, 59 N.J. at 251-52. But a new approach devised by our Supreme Court leads to a different result. It originated when a facially unconstitutional ordinance requiring registration of door-to-door commercial solicitors was salvaged by judicial interpretation. Collingswood v. Ringgold, 66 N.J. 350, 357 (1975) ("* * * we have performed such judicial pruning as will render the ordinance constitutional." Next, hundreds of rent control ordinances were amended and salvaged in one fell swoop when the court set the standard necessary to pass constitutional muster. Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 572 (1975) ("Every rent control ordinance must be deemed to intend, and will be so read, to permit property owners to apply to the local administrative agency for relief on the ground that the regulation entitles the owner to a just and reasonable rate of return.") Finally, the section of a one-year rent control ordinance that included authority to extend by resolution was invalidated, severed and judicially replaced. Inganamort v. Fort Lee, 72 N.J. 412, 371 A.2d 34 (1977) ("There has been no showing that if the governing body had been advised that section 20 was invalid, it would have terminated rent control at the end of the first year. It is far more likely that the intent would have been to have the ordinance continue to operate until repeal.")
The Teaneck governing body has expressed the intention of proscribing occupancy in residential zones to the fullest possible extent in order to maintain a family-type environment. On the one hand, Holy Name Hospital should not be permitted to use these properties as boarding houses or dormitories for transient hospital workers. On the other *189 hand, it is beyond the outer perimeter of permissible municipal control to consider mere habitation by a group of nuns as a zoning violation. If the regulation were to restrict occupancy of single-family dwellings to persons constituting a bona fide housekeeping unit, it would withstand judicial scrutiny and still carry out the legislative purpose. Berger v. State, supra, 71 N.J. at 225. Any numerical limitation would have to be of general application and reasonably related to habitable floor area or sleeping and bathroom facilities. Kirsch Holding Co. v. Manasquan, supra, 59 N.J. at 254.
Therefore, Township of Teaneck Code, Art. V, par. 1, § (a), is declared to be void except to the extent that it limits residential occupancy to single, nonprofit housekeeping units. Prosecution on the basis of the underlying municipal court complaint is permanently restrained.
NOTES
[1] Upheld as valid: Palo Alto Tenants' Union v. Morgan, 321 F. Supp. 908 (N.D. Cal. 1970), aff'd 487 F.2d 883 (9 Cir.1973), cert. den. 417 U.S. 910, 94 S.Ct. 2608, 41 L.Ed. 2d 214 (1974); Rademan v. Denver City and Cty., 186 Colo. 250, 526 P.2d 1325 (Sup. Ct. 1974); Durham v. White Enterprises, Inc., 115 N.H. 645, 348 A.2d 706 (Sup. Ct. 1975); Newark v. Johnson, 70 N.J. Super. 381 (Cty. Ct. 1961).

Stricken as unconstitutional: Timberlake v. Kenkel, 369 F. Supp. 456 (E.D. Wis. 1974), vacated and remanded 510 F.2d 976 (7 Cir.1975); Carroll v. Miami Beach, 198 So.2d 643 (Fla. Ct. App. 1967); Des Plaines v. Trottner, 34 Ill.2d 432, 216 N.E.2d 116 (Sup. Ct. 1966); Larson v. Spring Lake Heights, 99 N.J. Super. 365 (Law Div. 1968); Marino v. Norwood, 77 N.J. Super. 587 (Law Div. 1963); White Plains v. Ferraioli, 34 N.Y.2d 300, 357 N.Y.S.2d 449, 313 N.E.2d 756 (1974); Missionaries of Our Lady of La Salette v. Whitefish Bay Village, 267 Wis. 609, 66 N.W.2d 627 (Sup. Ct. 1954).
[2] The type of restrictive zoning sanctioned by this case has been criticized in the literature. See Note, "Burning the House to Roast the Pig": Unrelated Individuals and Single Family Zoning's Blood Relation Criterion, 58 Cornell L. Rev. 138 (1972); Note, "Excluding the Commune from Suburbia: The Use of Zoning for Social Control," 23 Hastings L.J. 1459 (1972); Note, "Village of Belle Terre v. Boraas: A `Sanctuary for People,'" 9 U.S.F.L. Rev. 391 (1975).
[3] The Teaneck Code is less restrictive in that it permits occupancy by three unrelated persons and has no limitation if owner-occupied.
[4] In the period between 1970 and 1976 the number of unmarried couples living together more than doubled and now exceeds the one million mark. Between 1963 and 1975 the divorce rate rose from 2.3 per thousand to 4.8 per thousand. U.S. Bureau of the Census, Marital Status and Living Arrangements: March 1976, at 2 (Jan. 1977).
[5] Of Teaneck's 3983 acres, 3573 (89.7%) are zoned one family, 73 acres (1.8%) permit medium-density residential use, and the balance is divided among commercial, light industrial and university zones. Bergen County Planning Board, Bergen County Zoning Review Technical Report 01-76.