1996 SD 129

**CITY OF BROOKINGS, Plaintiff and Appellee,**

v.

**Bradley WINKER, Defendant and Appellant.**

**No. 19499.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 10, 1996.

Decided Oct. 30, 1996.

Steven J. Britzman of Denholm, Glover & Britzman, Brookings, for plaintiff and appellee.

Sean M. O'Brien, Brookings, for defendant and appellant.

SABERS, Justice.

[¶ 1] Winker was convicted of violating a City of Brookings zoning ordinance which, by its definition of "family," limits to three the number of unrelated adults who may live together in one residential unit. Winker challenged the constitutionality of the ordinance under the equal protection and due process clauses of the South Dakota State Constitution. The circuit court upheld the constitutionality of the ordinance and we affirm.

## FACTS

[¶ 2] In November, 1994, Winker was the owner of a rental dwelling in Brookings. The dwelling was a duplex, with one residential unit in the basement and another on the main floor. The building is located within an "R–2" zone, which permits such two-family dwellings but limits the number of unrelated adults who may constitute a "family," and thus limits to three the number of unrelated adults who may live within each unit. An inspection of the property on November 8, 1994, revealed the presence of at least four unrelated adult college students residing on the main floor.

[¶ 3] Brookings filed a complaint against Winker, charging him with allowing a rental dwelling unit to be occupied in violation of Section 50.02.195 of Ordinance No. 715. That section restricts to two the number of "families" that may reside in a single dwelling located in an R–2 zone; Winker challenged the constitutionality of the definition of "family" under the South Dakota State Constitution due process and equal protection clauses. The trial court found the ordinance constitutional and convicted Winker for the violation. Winker appeals.

### Standard of Review

[¶ 4] Questions of law such as statutory interpretation are reviewed by this court de novo. *US West Communications, Inc. v. Public Utils. Comm'n of S.D.,* 505 N.W.2d 115, 122 (S.D.1993). It is well settled that a zoning law is afforded a presumption of constitutionality:

We must begin our analysis with the proposition that a zoning law is a legisla-

tive act representing a legislative determination and judgment, and like all legislative enactments a zoning law is presumed to be reasonable, valid and constitutional. *State Theatre Co. v. Smith,* 276 N.W.2d 259, 263 (S.D.1979) (citations omitted). The presumption of validity extends to municipal zoning ordinances. *City of Colton v. Corbly,* 323 N.W.2d 138 (S.D.1982). The burden of overcoming this presumption is on the party challenging its legitimacy and he or she must show the ordinance is unreasonable and arbitrary. *Id.* at 139 (citing *State Theatre, supra* and *Tillo v. City of Sioux Falls,* 82 S.D. 411, 147 N.W.2d 128 (1966)). Something more than abstract considerations is needed to demonstrate arbitrariness. *Id.* (citing *Tillo, supra*). The party assailing the ordinance must show facts supporting the claim the ordinance is arbitrary, capricious, and unconstitutional. *Fortier v. City of Spearfish,* 433 N.W.2d 228, 231 (S.D.1988). The circumstances and the locality must be taken into consideration in determining the validity of an ordinance. *Tillo,* 82 S.D. at 416, 147 N.W.2d at 130.

### ISSUE

**Whether the ordinance limiting the number of unrelated persons in a "family" violates the due process or the equal protection clauses of the South Dakota Constitution.**

■ [¶ 5] The Brookings ordinance restricts to two the number of "families" that may reside in a dwelling located in an R–2 zone. At issue is the definition of "family" as provided in the ordinance:

An individual or two or more persons related by blood or law occupying a dwelling unit and living as a single household entity or two or more persons related by blood or law occupying a dwelling unit and living as a single household entity together with the number of unrelated adults so that the family contains no more than three adults who are unrelated by blood or law or not more than three unrelated adults occupying a dwelling unit and living as a single household entity. In addition to the persons actually related by blood or law, the following persons shall be considered relat-

ed by blood or law for purposes of this ordinance:

(a) persons residing with the family for the purpose of adoption;

(b) not more than six persons under 18 years of age residing in a foster home licensed or approved by a governmental agency;

(c) not more than four persons 19 years of age or older residing with the family for the purpose of receiving foster care which is licensed or approved by a governmental agency;

(d) persons living with a family at the direction of a court.

Brookings, SD, Rev. Ordinances § 50.02.195 (1994).

■■ Brookings claims the objective behind this definition of "family" in the ordinance is to limit the density of population. The enactment of a zoning ordinance is a valid function of municipal government and Brookings is specifically authorized to regulate population density:

For the purpose of promoting health, safety, morals, or the general welfare of the community the governing body of any municipality is hereby empowered to regulate and restrict ... *the density of population* ... [and the] use of buildings, structures, and land for ... residence ... purposes.

SDCL 11–4–1 (emphasis added). *See also* SDCL 9–29–1 ("Every municipality shall have power to exercise jurisdiction for all authorized purposes...."); *City of Edmonds v. Oxford House, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1776, 1781, 131 L.Ed.2d 801, 810 (1995) ("To limit land use to single-family residences, a municipality must define the term 'family'; thus family composition rules are an essential component of single-family residential use restrictions.").

[¶ 7] Winker does not challenge the purpose of the ordinance; instead, he claims there is no rational relationship between the classification created by the definition of "family" and the object of controlling density of population. As indicated, he invokes the equal protection and due process clauses of the South Dakota Constitution, and claims

the ordinance violates one or both of those provisions.

[¶ 8] Our Constitution provides, in part, that "[n]o person shall be deprived of life, liberty or property without due process of law." SD Const art VI, § 2. Article VI, § 18 states: "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

When a constitutional challenge involves neither a suspect classification nor a fundamental right, the [United States] Supreme Court applies the rational basis test to assess whether the statute is violative of the 14th Amendment to the Constitution of the United States. The rational basis test requires statutes to be reasonably related to a legitimate state interest.

*Katz v. State Bd. of Medical & Osteo. Examiners*, 432 N.W.2d 274, 278 n. 6 (S.D.1988), *reh'g denied* (citations omitted). This court has adopted a more rigid test under the South Dakota Constitution. *Id. Accord Matter of Certif. of Questions of Law (Knowles v. United States)*, 1996 SD 10, ¶ 26, 544 N.W.2d 183, 189 ("We apply a more stringent test than the federal courts' rational basis test. The statute must 'bear a real and substantial relation to the objects sought to be attained.'") (quoting *Katz, supra*).

[¶ 9] There are no South Dakota cases addressing this issue. Brookings invites us to examine caselaw interpreting the United States Constitution, while Winker urges a parallel analysis to other states' decisions which have struck down similar ordinances on state constitutional grounds. Both methods of analysis are valid, even though we are not bound by interpretations of state constitutions other than our own.

[¶ 10] Brookings urges the court to adopt the reasoning found in the case of *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), where the United States Supreme Court upheld the constitutionality of an ordinance which prohibited occupancy of a dwelling by more than two unrelated persons living as a "family." The Court held the limitation was rationally related to a permissible goal:

A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines.... The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Belle Terre*, 416 U.S. at 9, 94 S.Ct. at 1541, 39 L.Ed.2d at 804. As Circuit Court Judge Steele noted in his opinion, "the ordinance considered in that case is so similar to the one in question that it is clear that the City's ordinance would pass muster under the United States Constitution."

[¶ 11] Winker points to several state cases which have departed to some extent from the reasoning in *Belle Terre*. *See, e.g., Borough of Glassboro v. Vallorosi*, 117 N.J. 421, 568 A.2d 888 (1990); *State v. Baker*, 81 N.J. 99, 405 A.2d 368 (1979); *Holy Name Hosp. v. Montroy*, 153 N.J.Super. 181, 379 A.2d 299 (Law Div.1977). The familiar thread in those decisions is a judicial dislike for utilizing zoning laws to relieve perceived social ills. The New Jersey Supreme Court suggested less restrictive alternatives to remedy the problems which zoning ordinances were intended to cure. In *Montroy*, the court noted that New Jersey suffered from a "long-standing critical shortage of housing." 379 A.2d at 302. The better solution, the court stated, would be to base any numerical limitation upon "habitable floor area or sleeping and bathroom facilities." *Id.* at 303 (citation omitted). *Accord Vallorosi*, 568 A.2d at 892; *Baker*, 405 A.2d at 374. *Baker* also advised the state to use the general police power to curb disruptive behavior and to limit the number of cars which could be parked at a residence. *Id.* at 373.

[¶ 12] In contrast, South Dakota's enabling legislation specifically empowers municipalities to legislate "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community[.]" SDCL 11–4–1. Therefore, the New Jersey line of cases is somewhat distinguishable. *McMinn v. Town of Oyster Bay*, 66 N.Y.2d 544, 498 N.Y.S.2d 128, 488 N.E.2d 1240 (1985), is not persuasive

either. In that case, the ordinance prohibited more than two unrelated adults from residing together *and* they had to be at least sixty-two-years-old. Here, the Brookings ordinance is not nearly so restrictive.

[¶ 13] Perhaps the most persuasive authority offered by Winker is *Charter Township of Delta v. Dinolfo,* 419 Mich. 253, 351 N.W.2d 831 (1984). The Michigan Supreme Court specifically rejected *Belle Terre:*

> Unrelated persons are artificially limited to as few as two, while related families may expand without limit. Under the instant ordinance, twenty male cousins could live together, motorcycles, noise, and all, while three unrelated clerics could not. A greater example of over- and under-inclusiveness we cannot imagine. The ordinance indiscriminately regulates where no regulation is needed and fails to regulate where regulation is most needed.

*Dinolfo,* 351 N.W.2d at 841–42. The government's argument in *Dinolfo* failed because its rationale was based on an "[unsupported] assumption that unrelated persons will manifest a behavior pattern different from the biological family." *Id.* at 840. However, Brookings' rationale for its ordinance, the regulation of population density, would in all likelihood have found approval with that court:

> [The township] is not, as a result of anything we say here today, without authority to regulate the behavior it finds inimical to its concept of a residential neighborhood, *including a rational limitation on the numbers of persons that may occupy a dwelling.* ... Nor are the plaintiffs precluded from distinguishing between the biological family and a functional family when it is rational to do so, such as in limiting the number of persons who may occupy a dwelling for such valid reasons as health, fire safety, *or density control.*

*Id.* at 843–44 (emphasis added).

[¶ 14] Winker claims because the size regulations in the ordinance are imposed only upon unrelated persons in a household, while persons related by blood or law are under no such restrictions, control of density of population is the "least logical rationalization for such zoning practices." He points out that a ten-member blood-related family could reside in such a dwelling and be in compliance with the ordinance. However, as indicated above, abstract considerations are insufficient. "[E]very line drawn by a legislature leaves some out that might well have been included." *Belle Terre,* 416 U.S. at 8, 94 S.Ct. at 1540, 39 L.Ed.2d at 803–04.

> When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.

*Louisville Gas & Elec. Co. v. Coleman,* 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770, 775 (1928) (Holmes, J., dissenting) (quoted in *Belle Terre, supra* at n. 5). *See also Town of Durham v. White Enterprises, Inc.,* 115 N.H. 645, 348 A.2d 706, 709 (1975) ("It is to be noted that many blood related families by their natural composition will meet the density requirements placed on unrelated groups.").

[¶ 15] The validity of a zoning provision must be tested according to the particular facts of each case. The considerations for the community which prompt the enactment of a zoning ordinance are often the same considerations which sustain it. Brookings is a college town and has unavoidable problems with population density. Therefore, we think the ordinance "bear[s] a real and substantial relation to the objects sought to be attained." *Knowles,* 1996 S.D. 10, ¶ 26, 544 N.W.2d at 189; *Katz,* 432 N.W.2d at 278 n. 6. It is neither arbitrary nor capricious to draw this line at the number of unrelated persons who may reside in the same household to maintain control over population density problems.

If an unrelated household group exceeds the designated density requirement it is by voluntary action of the group. The blood related family by its natural growth may become in excess of the density limit.

*Town of Durham,* 348 A.2d at 709. Winker has failed to establish facts sufficient to overcome the ordinance's presumption of validity. *Fortier,* 433 N.W.2d at 231. Therefore, we affirm the decision of the circuit court.

[¶ 16] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.