# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheldon Schwartz                                :
and Kenneth L. Baritz, Esquire                  :
                                                :
          v.                                    :
                                                :
Philadelphia Zoning Board of                    :
Adjustment                                      :
                                                :
Sheldon Schwartz                                :
and Kenneth L. Baritz, Esquire                  :
                                                :
          v.                                    :
                                                :
Philadelphia Zoning Board of                    :
Adjustment                                      :
                                                :
Sheldon Schwartz                                :
and Kenneth L. Baritz, Esquire                  :
                                                :
          v.                                    :   No. 1334 C.D. 2014
                                                :   Argued: May 5, 2015
Philadelphia Zoning Board of                    :
Adjustment                                      :
                                                :
Paul Abeln                                      :
                                                :
          v.                                    :
                                                :
Philadelphia Zoning Board of                    :
Adjustment                                      :
                                                :
Appeal of: Paul Abeln, Sheldon                  :
Schwartz, Rachel Lisitsa, Stephanie             :
Burns, Elizabeth Clanaman and                   :
Jessica Nabitovsky                              :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  September 24, 2015**

Sheldon Schwartz and Paul Abeln (collectively Appellants)[1] appeal the July 1, 2014 order of the Court of Common Pleas of Philadelphia County (Trial Court) holding that the definition of "family" contained in Section 14-102(49) of the former Philadelphia Zoning Code (Code) is constitutional on its face and as applied to Appellants.  We affirm.

This appeal arises out of two matters that proceeded separately before the City of Philadelphia Zoning Board of Adjustment (ZBA).  Both matters began when the Department of Licenses and Inspections (L&I) issued citations to Appellants.  Appellants each own and are landlords for properties zoned for single-family and two-family residential use; Appellants' properties each have use permits for single-family residential use.  The properties are located in the Powelton Village section of the City of Philadelphia near the Drexel University campus.  Appellants were each cited for violating a section of the Code[2] that prohibits an unauthorized change in the zoned use or occupancy of a property

---

[1] Kenneth L. Baritz, Esquire, is not participating in this appeal and was named in the underlying action solely because he appealed the initial violation on behalf of his client, Sheldon Schwartz. (*See* April 1, 2015 Notice of Non-Participation.)  Appellees Robin Dominick, Carolyn Healy, Michael Jones, George Poulin, the Powelton Village Civic Association and the City of Philadelphia Zoning Board of Adjustment are precluded.  (*See* April 1, 2015 Order.)  The participating Appellees are the City of Philadelphia and Drexel University.

[2] Philadelphia enacted a new Code, with an effective date of August 22, 2012, and has been engaged in a comprehensive remapping process.  The citations were issued under the prior Code. Under the new Code, the properties have remained zoned for single-family and two-family residential use.

2

based on the presence of more than three unrelated individuals residing in a property zoned for single-family residential use. The Code defines a "family" as:

> A person living independently or a group of persons living as a single household unit using housekeeping facilities in common, but not to include more than three persons unrelated by blood, marriage or adoption.

Code § 14-102(49).[3] Appellants each rented their properties to groups of students attending Drexel University that contained more than three persons unrelated by blood, marriage or adoption.

Appellants' challenges to the citations followed different procedural paths. Mr. Schwartz appealed to the L&I Review Board and the Board transferred his appeal to the ZBA. The ZBA held a hearing and denied the appeal. Mr. Schwartz then appealed the denial to the Trial Court. Mr. Abeln appealed directly to the ZBA, which denied the appeal following a hearing. Mr. Abeln then appealed the denial to the Trial Court and the Trial Court remanded to the ZBA to develop a full record. The ZBA held three hearings and issued a March 18, 2014 decision containing findings of fact and conclusions of law that denied the appeal.[4] Mr. Abeln appealed the denial to the Trial Court.

---

[3] Under the new Code, this definition includes foster children and life partners. *See* Current Code § 14-203(115).

[4] On remand from the Trial Court, the ZBA held multiple hearings in order to create an evidentiary record. Paul Abeln testified before the ZBA on July 31, 2013. (Reproduced Record (R.R.) at 1687a-1725a.) The hearing held on September 11, 2013 included testimony from tenant Rachel Lisitsa and Reaves Luken, III, a real estate appraiser and consultant offered as an expert by Paul Abeln. (R.R. at 1595a-1629a.) The hearing held on December 4, 2013 contains testimony from L&I Inspector Charles Wise, George Poulin, an architect and zoning committee chair of the Powelton Village Civic Association (PVCA), Michael Jones, President of PVCA, Brian Keech, Drexel University's Senior Vice-President for Government Community Relations, and neighbors Cara Crosby and Joe Revelock. (R.R. at 1441a-1592a.)

On August 2, 2013, the Trial Court consolidated the appeals. The legal issues involved in the appeals are identical. The Trial Court did not take additional evidence and both Mr. Schwartz and Mr. Abeln proceeded in reliance on the record developed in the Abeln proceedings before the ZBA for the property located at 317 N. 34th Street. The Trial Court issued a thorough and well-reasoned opinion on October 30, 2014 affirming the ZBA.

Before this Court, Appellants argue that: (i) the Code provision defining "family" should be reviewed with strict scrutiny to determine its constitutionality; (ii) the Code provision defining "family" is facially unconstitutional under both a strict scrutiny and a rational basis analysis; and (iii) the Trial Court erred in concluding that the evidence did not demonstrate that the use of the property by more than three unrelated persons was functionally equivalent to a single-family use of the property.[5]

The United States Supreme Court held in *Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926), that the enactment of zoning ordinances is a constitutionally permissible exercise of the police power and, as such, an ordinance will be held unconstitutional only where the ordinance is clearly arbitrary and unreasonable, with no substantial relation to the public health, safety, morals, or general welfare. *Id*. at 386, 395. The Court cautioned reviewing courts that "[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." *Id*. at 388. In addressing the

---

[5] Where the trial court has taken no additional evidence, appellate review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43, 46 (Pa. 2004). An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

4

constitutionality of zoning ordinances under the United States Constitution, the United States Supreme Court echoed the conclusion previously reached by the Pennsylvania Supreme Court when addressing the constitutionality of zoning ordinances under the Pennsylvania Constitution; following *Euclid*, the federal courts and the courts of this Commonwealth have scrutinized zoning ordinances to determine whether the ordinance had a rational basis and if the ordinance was not clearly arbitrary, the courts have deferred to legislative judgment and upheld the ordinance.[6] *Best v. Zoning Board of Adjustment of the City of Pittsburgh*, 141 A.2d 606 (Pa. 1958); *Appeal of Ward*, 137 A. 630 (Pa. 1927); *Appeal of White*, 134 A. 409 (Pa. 1926).

The United States Supreme Court was asked to revisit the level of scrutiny applied to the review of zoning ordinances in *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974), where an ordinance that permitted single-family residences and excluded all other residential uses was challenged on the basis that it violated the right to equal protection under the law and the rights of association, travel, and privacy guaranteed by the United States Constitution. *Id*. at 3, 8. The ordinance at issue in *Belle Terre* defined "family" as: "(o)ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not

---

[6] Article I, Section 1 of the Pennsylvania Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution protect private property rights. Article I, Section 1 provides that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. 1 § 1. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," and the Fourteenth Amendment makes these protections applicable to the states. U.S. Const. amend. V, XIV.

exceeding two (2) living and cooking together as a single housekeeping unit through [sic] not related by blood, adoption, or marriage shall be deemed to constitute a family." *Id*. at 2. After the owner of a home subject to the ordinance was cited by the village for leasing the property to a group of six unrelated college students, the owner and three tenants brought suit under 42 U.S.C. § 1983 seeking an injunction and a declaration that the ordinance was unconstitutional. *Belle Terre*, 416 U.S. at 3.

The Court held in *Belle Terre* that the ordinance did not burden fundamental rights and instead was economic and social legislation that bore a rational relationship to a permissible state objective. *Id*. at 8. The Court noted that when a point must be fixed to mark the change from one category to another, the legislature must act reasonably but cannot be expected to act with absolute precision.[7] *Id*. at 8 n.5. The Court also concluded that the concept of public welfare was broad and inclusive; rather than limited to preventing blight, disease, and crime, the police power included the authority to design and create different kinds of spaces within a community, stating:

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Id*. at 9 (internal citations omitted). The Pennsylvania Supreme Court has likewise interpreted the police power as granting the legislature broad authority to enact

---

[7] "[T]he Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985).

6

zoning ordinances that seek to serve the public need by supporting different types of residential housing, providing for aesthetically pleasing and open spaces, and establishing well-balanced and multifarious land uses through large-scale planning within municipalities. *Best,* 141 A.2d at 611-612; *see also Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401, 410 (Pa. 2004) ("one of the many benefits of single-family zoning districts is that they create residential neighborhoods in which the residents may develop a sense of community and a shared commitment to the common good of that community. Without some level of stability and permanence in the composition of the groups residing in such residential districts, this goal is necessarily subverted").

Appellants do not dispute the primacy of *Euclid* in any discussion of the constitutionality of a zoning ordinance or the majority holding in *Belle Terre* and its adoption by the courts of this Commonwealth. *See, e.g., Appeal of Miller*, 515 A.2d 904, 909 (Pa. 1986); *Owens v. Zoning Hearing Board of Borough of Norristown*, 468 A.2d 1195, 1197 (Pa. Cmwlth. 1983) (ordinance preventing seven adults unrelated by blood or marriage from residing in single-family and two-family residential district is a legitimate exercise of the police power); *Appeal of McGinnis*, 448 A.2d 108, 112 (Pa. Cmwlth. 1982) (ordinance prohibiting more than five unrelated people from cohabitating in single-family residential district is a permissible exercise of the police power); *see also Farley v. Zoning Hearing Board of Lower Merion Township*, 636 A.2d 1232 (Pa. Cmwlth. 1994); *Lantos v. Zoning Hearing Board of Haverford Township*, 621 A.2d 1208, 1209 (Pa. Cmwlth. 1993).[8] Instead, Appellants argue that the precedential value of the majority

---

[8] *Farley* and *Lantos* are particularly salient here as each case addressed ordinances that directly regulated use of single-family residences for student housing. In *Farley*, a group of property owners argued that an ordinance unconstitutionally and arbitrarily distinguished student tenants

holding in *Belle Terre* has eroded and been superseded in many jurisdictions by the

dissent authored by Justice Thurgood Marshall.[9]

from other residential property users and should be struck down under the Pennsylvania Constitution. 636 A.2d at 1234, 1236 & n.2. This Court held that the township had produced substantial evidence that the presence of students diminished the residential character of the neighborhood by creating a "dormitory-like" atmosphere with increased noise, trash, congestion, and public urination. *Farley*, 636 A.2d at 1238-1239. In *Lantos*, the municipality enacted an ordinance that permitted use of single-family residences for student housing by special exception. 621 A.2d 1209. An owner of two single-family residences that did not meet the requirements for a special exception brought a challenge arguing that continued use of his properties as student housing was a legal non-conforming use and that an ordinance limiting use of single-family residences by students was unconstitutional. *Id*. at 1210. This Court concluded that the property owner had not produced evidence that "the unrelated student tenants had maintained a 'common household,' operating in the manner akin to a family unit or the functional equivalent thereof," and therefore the property owner had not shown that the use had been lawful under the previous ordinance. *Id*. at 1211. Furthermore, this Court rejected an attempt to impose a higher scrutiny than the rational basis test because students are not a suspect class and instead held that the constitutional challenge was without merit. *Id*. at 1212. Following *Farley* and *Lantos*, it is clear that municipalities in Pennsylvania may enact ordinances excluding students from certain districts where the ordinance is rationally related to the legitimate purpose of preserving single-family residential uses within the municipality.

[9] *See, e.g., Berger v. State*, 364 A.2d 993, 1002-1004 (N.J. 1976) ("When the Mantoloking ordinance defining 'family' as those persons related by blood, marriage or adoption is measured against the demands of due process, it is clear that the regulation must fall. It so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved. As such, we cannot conclude that the definition of 'family' is reasonable."); *McMinn v. Oyster Bay*, 488 N.E.2d 1240, 1244 (N.Y. 1985) (accord); *Charter Township of Delta v. Dinolfo*, 351 N.W.2d 831, 843 (Mich. 1984) (accord); *Santa Barbara v. Adamson*, 610 P.2d 436, 442 (Cal. 1980) (accord). *But see also Ames Rental Property Association v. City of Ames*, 736 N.W.2d 255, 263 (Iowa 2007) ("We find Ames's zoning ordinance, which allows an unlimited number of related persons to live together while limiting to three the number of unrelated persons in single-family zones, is rationally related to the government's interest in providing quiet neighborhoods."); *McMaster v. Columbia Board of Zoning Appeals*, 719 S.E.2d 660 (S.C. 2011) (accord); *State v. Champoux*, 566 N.W.2d 763, 776 (Neb. 1997) (accord); *City of Brookings v. Winker*, 554 N.W.2d 827, 831-832 (S.D. 1996) (accord); *Dinan v. Board of Zoning Appeals of Town of Stratford*, 595 A.2d 864, 871 (Conn. 1991) (accord); *Town of Durham v. White Enterprises, Inc.*, 348 A.2d 706, 710 (N.H. 1975) (accord).

In his dissent, Justice Marshall agreed with the *Belle Terre* majority's conclusion that the ordinance had a legitimate purpose that was within the legislature's power to advance, but concluded that the ordinance impermissibly burdened an individual's first amendment right to association and the right to privacy, describing the village's attempts to regulate zoning as a "commendable course in a constitutionally faulty vessel." 416 U.S. at 15, 20 (dissent). Justice Marshall concluded that the ordinance impermissibly discriminated on the basis of personal lifestyle choice as to household companions and imposed greater restrictions on people who deviated from the community norm. *Id*. at 16 (dissent). Justice Marshall further concluded that the village's attempt to address density, noise and traffic, to appeal to families, and to preserve economic vitality was both underinclusive and overinclusive; the ordinance permitted an infinite number of related people to cohabitate while preventing three unrelated people sharing a single income and vehicle to cohabitate in a large house. *Id*. at 18-19 (dissent). Finally, Justice Marshall noted the lack of any evidence in the record that demonstrated the goals of the village would be undermined by allowing the same number of unrelated people to share a dwelling as it did related people. *Id*. at 20 (dissent).

Justice Marshall's dissent was animated by a concern that a municipality not be allowed to "fence out those individuals whose choice of lifestyle differs from that of its current residents." *Id*. at 16-17 (dissent). In support of this principle, Justice Marshall cited to the landmark Pennsylvania Supreme Court case *Appeal of Girsh*, 263 A.2d 395 (Pa. 1970), which held that a township had "to provide for apartments in its plan for future growth; it cannot be allowed to close its door to others seeking a 'comfortable place to live.'" *Id*. at 397;

9

*see also Belle Terre*, 416 U.S. at 16 n.4 (dissent).  However, in *Belle Terre* and *Girsh* the residential uses sought by the challengers were prohibited within the bounds of the municipalities.  In the instant matter, the Code does not prohibit more than three persons unrelated by blood, marriage or adoption from cohabitating within the municipality; instead the Code prohibits groups that do not fit within the definition of "family" from cohabitating by right in a property zoned for single-family residential use.

Even if we were to accept that Justice Marshall's dissenting views had evolved into majority precedent, it is difficult to reason that these views would hold sway here.  It is of note that in highlighting an example of an ordinance that Justice Marshall did find constitutionally permissible, he singled out an ordinance that defined "family" as "one person living alone, or two or more persons related by blood, marriage, or legal adoption, or a group not exceeding four persons living as a single housekeeping unit," to the detriment of a communal living group cohabitating in an area zoned for single-family residential use.  *Belle Terre*, 416 U.S. at 17 n.6 (dissent) (*citing Palo Alto Tenants' Union v. Morgan*, 487 F.3d 883 (9th Cir. 1973)).  The Code provides for a diversity of residential uses by right, as the village ordinance in *Belle Terre* did not, and the Code strikes a balance in its provision of uses by right in single-family residential districts between the fundamental rights surrounding related or legally bound families,[10] and the rights

---

[10] *See, e.g., Obergfell v. Hodges*, __ U.S. __, __, 135 S. Ct. 2584, 2599-2603 (2015) (discussing the fundamental right to marry and the constellation of benefits that States have permissibly linked to marriage, as well as the privileged place marriage holds in our laws and society); *Moore v. City of East Cleveland*, 431 U.S. 494, 498-503 (1977) (plurality) (discussing Fourteenth Amendment protection of marriage and family life and recognizing that regulations intruding into the life of families related by blood, marriage or adoption are subject to a higher level of scrutiny); *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (recognizing that "[m]arriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival.").  The

of those who are unrelated but desire a similar residential use without having to seek a variance or special exception.

This Court is not persuaded by Appellants' argument that the opinions of our sister states interpreting their state constitutions, coupled with the passage of time, has lessened the authority of the holding reached by the *Belle Terre* majority. Pennsylvania courts have consistently utilized the rational basis test to examine the constitutionality of zoning ordinances limiting the composition of households in single-family residential districts. Moreover, where applicable, the *Belle Terre* majority has been interpreted as controlling authority under the Pennsylvania as well as the United States Constitution. *Appeal of Miller*, 515 A.2d at 909; *Owens*, 468 A.2d at 233; *Appeal of McGinnis*, 448 A.2d at 112 & n.2; *Children's Home of Easton v. City of Easton*, 417 A.2d 830 (Pa. Cmwlth 1980)[11]; *see also Farley* 636

---

constitution continues to be interpreted to privilege relationships grounded in marriage, adoption, and biology; the privileging of these relationships, when equally applied to all people who enter into them, has not been interpreted to burden the right of association, including the associational rights of those who do not establish formal legal relationships amongst one another. *See, e.g. Moore*, 431 U.S. at 499 (concluding that the ordinance in *Moore* is distinguishable from the ordinance in *Belle Terre* because the ordinance in *Belle Terre* affected only unrelated persons while the ordinance in *Moore* "slic[es] deeply into the family itself.")(plurality).

[11] In *Children's Home*, this Court held that an ordinance was unconstitutional as applied because it defined family to prohibit the use of a dwelling by two parents with two biological children and two foster children in an area zoned medium density residential. *Id*. at 831, 833. This Court stated that by permitting two parents with four biological children and prohibiting two parents with two biological children and two foster children the ordinance was not rationally related to the legislature's objective. *Id*. at 833. This Court discussed and distinguished *Belle Terre*, concluding that while "*Belle Terre* on its face would appear to control the matter now before us, we are of the opinion that the factual differences between a foster family as described in the record of this case and six unrelated college students residing temporarily in a residential dwelling are so vast that a different result is compelled." *Children's Home*, 417 A.2d at 833. Furthermore, this Court stressed that the ordinance was not facially unconstitutional. *Id*.; *see also Hopkins v. Zoning Hearing Board of Abington Township*, 423 A.2d 1082 (Pa. Cmwlth. 1980) (ordinance limiting more than two unrelated persons from living together in an area zoned for single-family use is unconstitutional as applied to three intellectually disabled children and

A.2d at 1236 n.2.  Therefore, we reaffirm that a zoning ordinance limiting single-family residential use based on a definition of "family" that permits an unlimited number of persons related by blood, marriage, or adoption to cohabitate in a single-family residence, while restricting the number of unrelated persons who may do so, is not subject to strict scrutiny under the Pennsylvania Constitution and instead should be reviewed to determine if the ordinance has a rational basis.

Social and economic legislation involves drawing lines that are inherently overinclusive and underinclusive.  The concerns expressed by Justice Marshall in his *Belle Terre* dissent regarding legislative attempts to regulate people alleged to deviate from a supposed norm is an area of great concern to the courts, particularly as our society has grown to recognize previously unscrutinized barriers to access and freedoms guaranteed to all people by our founding documents.  These concerns do not, however, render each and every line drawn and category created by the legislative branch constitutionally infirm.  Rather, these concerns require us to ensure that the lines drawn and categories created are free of arbitrary whims and burdens placed on fundamental rights and interests.  Land use is an area of law where the rubber meets the road in the relationship between local government and its citizenry; land use law reaches from mundane issues of setbacks to profound issues of personal freedoms, and in traversing this spectrum the land use laws of a local government encroach upon the lives and living space of each person within its bounds, creating tension with what Justice Brandeis termed the right most valued by civilized people, "the right to be let alone."  *Olmstead v. United States*, 277 U.S. 438, 478 (1928).  We resolve this tension by recognizing that such intrusions are permissible when rationally related to the use of land rather

two house parents brought together by a state program because they are the functional equivalent of a biological family).

12

than the people using it and, in dense urban areas, have been acknowledged as a practical necessity, and by construing zoning ordinances strictly to prohibit restriction of the use of land by implication. *Euclid*, 272 U.S. at 387; *Fidler v. Zoning Board of Adjustment of Upper Macungie Township*, 182 A.2d 692, 695 (Pa. 1962). A zoning ordinance is presumed to be constitutional, it is presumed to be enacted in service of the general welfare, and therefore, a heavy burden rests upon the person raising a constitutional challenge. *Upper Salford Township v. Collins*, 669 A.2d 335, 336 (Pa. 1995). Although *Belle Terre* informs our analysis of the constitutionality of the definition of "family" contained in the Code, our analysis is more aptly guided by the precedents of our Supreme Court, specifically *Appeal of Miller* and *Albert*.[12]

In *Appeal of Miller*, our Supreme Court addressed whether use of a single-family residence as a personal care boarding home constituted a valid non-conforming use of the property. The definition of "family" contained in the ordinance, which was replaced by a definition of "family" utilizing blood and marriage, permitted "any number of persons living and cooking together as a single housekeeping unit." 515 A.2d 904. Our Supreme Court held that this definition of "family" permitted use of a single-family home to board elderly residents and that appellant's use was therefore a legal non-conforming use. *Id*. at 909.

In reaching its holding in *Appeal of Miller*, our Supreme Court reviewed the history of ordinances defining single-family residential uses, explaining that while the legitimacy of creating exclusive single-family districts

---

[12] In *Albert* our Supreme Court held that a property zoned for single-family residential use could not be used as a sober-living house for people in recovery from drug and alcohol addiction because the residents changed on a regular basis and the group did not possess internal stability and permanence, and therefore were not functionally equivalent to a "family," even though the applicable ordinance left that term undefined. 854 A.2d at 410-411.

13

was settled early on and employed frequently as suburban communities developed, the question of how to define "family" remained unsettled. *Id*. at 907. The first attempts to define "family" in an effort to reduce uncertainty and litigation led to adoption of the term "single housekeeping unit," which focused the inquiry on whether the unit functioned as a "family" rather than the respective relationships within the unit and permitted large extended families to live together, but which also failed to limit litigation, leading to the subsequent usage of definitions based on blood, marriage and adoption. *Id.* Our Supreme Court concluded that the term "single housekeeping unit" was not construed to limit use to persons related by blood or marriage or to exclude units where fees were paid. *Id*.

The Court examined two prior Commonwealth Court cases addressing the validity of ordinances that limited single-family residential use by defining "family" and concluded that in each instance this Court had employed a functional analysis to determine if the use of the property was equivalent to the single-family use defined in the challenged ordinance. *Id.* at 908. The cases examined by our Supreme Court were *Children's Aid Society v. Zoning Board of Adjustment*, 402 A.2d 1162 (Pa. Cmwlth. 1979), and *Wengert v. Zoning Hearing Board of Upper Merion Township*, 414 A.2d 148 (Pa. Cmwlth. 1980). In *Children's Aid Society*, a charitable society sought to use a detached dwelling in a residential district permitting single-family use for a family with six foster children. 402 A.2d at 1163. The society sought a special exception in the form of a use certificate because the foster family did not fit within the definition of "family" contained in the ordinance, which defined "family" as related by blood or marriage, and L&I denied the use certificate. *Id*. This Court held that the ordinance was unconstitutional as applied because use of the property as a residence for a family

14

with foster children was functionally equivalent to use of the property as a residence for a biologically related family. *Id*. at 1164. By contrast, in *Wengert*, this Court held that a corporate-run foster home for troubled adolescents referred by court order was an institutional home and was not a permitted use in a single-family residential district that defined family as "any number of individuals living together as a single non-profit housekeeping unit." 414 A.2d at 149.

Following its examination of *Children's Aid Society* and *Wengert*, the Court in *Appeal of Miller* approved of this Court's application of "single housekeeping unit" to exclude uses that were primarily driven by profit or were for therapeutic or corrective purposes, but concluded that neither of these factors precluded the appellant's use of her residence as a personal care boarding home. 515 A.2d at 909. The Court held that, when employing a functional analysis, the evidence demonstrated that the unit within appellant's home fit within the definition of "family" contained in the applicable ordinance. In reaching its holding the Court highlighted the fact that the property owner provided her fellow residents with room, board, some transportation, supervision in grooming, and monitoring of personal needs, that each resident had access to and shared the entire house, and that the residents cooked and took meals together. *Id.* at 905, 908. The Court concluded that "[t]he mere fact that a member of the unit pays a fee for belonging to the unit does not transform the relationship unless it also appears that the profit motive is the basis for the relationship." *Id.* The Court addressed transience as a factor for evaluating the unit, stating "it is clear that this is not a transient establishment but rather that the residents usually remain substantial periods of time and move only for health reasons or personal preference." *Id*.; *see also Albert*, 854 A.2d at 410 ("in order to qualify as a 'single housekeeping unit,' a

15

group of individuals in a single household must not only function as a family within that household, but in addition, the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient"). Finally, the Court concluded *Appeal of Miller* with its approval of the newly enacted definition of family that utilized blood and marriage, stating that the "Township recognized the inadequacy of its earlier ordinance and has adopted a more specific one to carry out its intended planning for the area." *Id.*

Following *Appeal of Miller*, as more and more municipalities adopted a definition of family that utilized biological and legal relationships, including blood, marriage, life-partners, and adoption, our Supreme Court and this Court have repeatedly held that utilizing these relationships to limit use of a single-family residence is not facially unconstitutional. *Albert*, 854 A.2d at 407 n.5; *Act I, Inc. v. Zoning Hearing Board of Bushkill Township*, 704 A.2d 732, 737 (Pa. Cmwlth. 1997). However, *Appeal of Miller* makes clear that facial validity is not the end of the inquiry, but rather the court must closely examine the ordinance in the context of the record to ensure that the ordinance is not unconstitutional when it is applied to the specific use at issue. *See, e.g., Appeal of Lynch v. Community Homes, Inc.*, 554 A.2d 155 (Pa. Cmwlth. 1989).[13] Based on the record created before the ZBA,

---

[13] In *Appeal of Lynch*, this Court examined a zoning ordinance that defined "family", in relevant part, as "[a]ny number of individuals living and cooking together as a single housekeeping unit, provided that not more than two (2) of such number are unrelated to all of the others by blood, marriage or legal adoption." 554 A.2d at 156 n.3. This Court succinctly summarized the analysis required in constitutional challenges to definitions of "family," stating:

> Whether zoning ordinances may or may not subject [group homes] or similar operations to additional requirements not imposed upon biological families, even when such operations can be viewed as functional equivalents of biological families, must be determined on a case-by-case basis with consideration given to the ordinance and municipal interests in question. *Miller*; *Hopkins*; *Children's Aid Society*.

16

Appellants have not demonstrated that the definition of family used in the Code is unconstitutional as applied to their use of the properties.

Appellants admit that their properties are zoned for single-family residential use and are rented to more than three unrelated individuals. However, Appellants contend that the use of the properties by unrelated groups of students is functionally equivalent to use of the properties by a "family." In support of their argument that the ordinance is unconstitutional as applied to their use of the properties, Appellants offered the testimony of Paul Abeln, the owner of 317 N. 34th Street, and Rachel Lisitsa, a tenant residing at 317 N. 34th Street.[14]

Mr. Abeln testified that he does not reside at the property and that he rents the property to groups primarily consisting of students. (ZBA July 31, 2013 Hearing Transcript (July H.T.) at 13, 31, R.R. at 1690a, 1695a.) Mr. Abeln testified that he "advertised it as a house for a group of friends to live together, to make it a home and enjoy their experience while at Drexel University, or their college experience." (*Id.* at 38, R.R. at 1697a.) Mr. Abeln testified that he has three tenants from the group sign a lease and lists the remainder of the residents on the lease as additional occupants of the property. (*Id.* at 39, R.R. at 1697a.) Mr. Abeln further testified that each of the residents has access to all parts of the house and that he receives one check each month signed by one of the tenants listed on

---

*Appeal of Lynch*, 554 A.2d at 158 (holding that definition of "family" was not unconstitutional as applied to proposed use of the subject property for a community living group home for intellectually disabled persons).

[14] Appellants also offered the testimony of Reaves Lukens, III, a real estate appraiser and consultant, who testified concerning the economic benefit derived from a higher density use of the property but did not address whether the current use of the property was functionally equivalent to the zoning ordinance's definition of single-family residential use. (ZBA September 11, 2013 Hearing Transcript at 57-130, R.R. at 307a-326a.)

the lease. (*Id*. at 47-48, R.R. at 1699a.) At the time of the hearing before the ZBA, eight people were residing at the property, collectively paying $5,000 per month in rent in accordance with a two-year lease. (*Id*. at 52, 56, 60, R.R. at 1700a-1702a.)

Ms. Lisitsa testified that she rents the property with seven other tenants under a two-year lease that she and two other tenants signed with their parents as co-signers. (ZBA September 11, 2013 Hearing Transcript (Sept. H.T.) at 15, 28, 51, R.R. at 297a, 300a, 306a.) Ms. Lisitsa testified that the other residents of the property are her friends and sorority sisters, most of whom she's known for "a couple of years now," since they rushed their sorority together. (*Id*. at 20, 22, R.R. at 298a, 299a.) Ms. Lisitsa testified that during the lease, two of her roommates moved out of the property, and two more of her sorority sisters moved in after reaching an arrangement with the residents who were leaving. (*Id*. at 28, 40, 41, R.R. at 300a, 303a.) Ms. Lisitsa testified that she takes a leadership role in the household; however, in regard to the incoming occupants of the property, Ms. Lisitsa stated that the "parents are mainly the ones who handle it" and "I wasn't involved in it because I wasn't moving out. The previous tenants and the new tenants were the ones dealing with it. I just knew they were moving in." (*Id*. at 40, 51, R.R. at 303a, 306a.) Similarly, Ms. Lisitsa testified that her father reviewed and signed the lease before she signed it and that her father pays for her rent and handles the collection of rent from the other occupants because "[h]e's just more responsible than I am, so we trust him more than we do trust a 20 year old girl with rent." (*Id*. at 33-35, R.R. at 301a-302a.)

Ms. Lisitsa also testified that each of the occupants of the property have access to the full house, that the occupants do not rent merely a room, and that although the individual bedrooms do have locks, "We don't really lock the

18

doors, but if I were to go home for a weekend, I may lock it just in case the front door is left unlocked by accident so no strangers can come in." (*Id*. at 20, 57, R.R. at 298a, 307a.) Ms. Lisitsa testified that the occupants of the property cooked, dined and did chores together, bought or acquired furnishings as a group for common use, and engaged in activities and planning as a group. (*Id*. at 17, 20, 38, 54-55, R.R. at 297a, 298a, 301a, 307a.) Finally, when questioned as to whether she and the other occupants of the house considered themselves a family, Ms. Lisitsa testified that her family lived in Richboro, Pennsylvania, which was home, but that she would describe herself as having two families. (*Id*. at 32, 56-57, R.R. at 301a, 307a.)

The Code prevents more than three persons unrelated by blood, marriage or adoption from cohabitating in a single-family residence. The record here reflects that more than three persons unrelated by blood, marriage or adoption use the property as their residence; none of the occupants are legally bound to one another and the group within the house has not shown itself to be a stable permanent unit, although the evidence does reflect that they have permanent biological, financial and legal ties with individuals who do not use the residence. The use of the property is therefore very much unlike the use in *Children's Aid Society* of a single-family residential home by a foster family. Instead, the use of the property more closely resembles the use in *Albert*. In *Albert*, the group was not bound together by internal ties but by an external goal each was seeking to achieve—to stay sober and return to their lives and families—which, when achieved, would mark the end of the composition of the group and therefore leant the group a transient character. 854 A.2d at 410. In the instant matter, each of the residents are bound together by their college experience, ties which necessarily

entail regular change in the groups formed to use the property, and the internal composition of these groups. However, even *Albert* is of little application because the ordinance there had left "family" undefined, whereas here the ordinance very clearly defines the term.

While the evidence supports the determination that the individual residents have formed a single-household unit, the Code has a more restrictive definition of "family" than the definition applicable in *Appeal of Miller*, capping the number of unrelated people who can compose such a unit in a property zoned for single-family residential use at three. Therefore, evidence that the group is "living as a single household unit using housekeeping facilities in common," is insufficient to meet Appellants' burden. Code § 14-102(49). Instead, when a zoning ordinance utilizes the term "family" to define single-family residential use based upon how the household is composed rather than on how the residents within the household function, the burdened party must produce substantial evidence to show that the use of the property will be equivalent to the use of the property by a group that does fit within the strict definition of "family" found in the ordinance. *Compare Children's Home* and *Hopkins*, *with Act I* and *Appeal of Lynch*. Appellants have not done so, seeking instead to graft the analysis applicable to ordinances that do not utilize blood, marriage or adoption to define "family" onto the definition found in the Code. Therefore, we conclude that because Appellants have not produced substantial evidence to demonstrate that their use of the properties is equivalent to use of the property by a group of persons related by blood, marriage or adoption, Appellants have not demonstrated that the Code is unconstitutional as applied to their use of the properties.

20

In sum, we hold that the question of the constitutionality of a zoning ordinance is subject to a rational basis review, zoning ordinances defining "family" using biological and legal bonds are not facially unconstitutional, and the definition of "family" found in the Code is not unconstitutional as applied to Appellants' use of their properties. Accordingly, the order of the Trial Court is affirmed.

**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheldon Schwartz                          :
and Kenneth L. Baritz, Esquire            :
                                          :
                                          :
              v.                          :
                                          :
                                          :
Philadelphia Zoning Board of              :
Adjustment                                :
                                          :
                                          :
Sheldon Schwartz                          :
and Kenneth L. Baritz, Esquire            :
                                          :
                                          :
              v.                          :
                                          :
                                          :
Philadelphia Zoning Board of              :
Adjustment                                :
                                          :
                                          :
Sheldon Schwartz                          :
and Kenneth L. Baritz, Esquire            :
                                          :
                                          :
              v.                          :   No. 1334 C.D. 2014
                                          :
Philadelphia Zoning Board of              :
Adjustment                                :
                                          :
                                          :
Paul Abeln                                :
                                          :
                                          :
              v.                          :
                                          :
Philadelphia Zoning Board of              :
Adjustment                                :
                                          :
                                          :
Appeal of: Paul Abeln, Sheldon            :
Schwartz, Rachel Lisitsa, Stephanie       :
Burns, Elizabeth Clanaman and             :
Jessica Nabitovsky                        :

# **O R D E R**

AND NOW this 24th day of September, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter affirming the decision and order of the City of Philadelphia Zoning Board of Adjustment is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**